[Civ. No. 5072. Fourth Dist. Nov. 17, 1955.]

FRED CONRAD, Appellant, v. CHARLES P. THOMPSON
et al., Respondents.

Best, Best & Krieger and Enos C. Reid for Appellant.

Harmon C. Brown for Respondents.

BARNARD, P. J.—The defendants purchased 10 acres of land from one Gilmore under a contract dated February 1, 1952. The plaintiff acted as broker and was paid a commission by Gilmore. This contract recited that Thompson desired to purchase this property for the purpose of subdividing and erecting dwellings thereon. It provided for a price of $18,000, with a down payment of $5,000, and an escrow; that the seller should receive $300 from the sale of each lot to apply on the purchase price; and that if any balance remained after two years it should be payable in monthly payments of $50, and secured by a trust deed on the remaining lots. This agreement also contained a paragraph providing that Fred Conrad "shall at all times have the exclusive handling of said property in regard to the sale of all lots and to include all improvements placed thereon"; that "the provision in this paragraph shall be in lieu of any other agreement with the said Fred Conrad"; and that "Charles P. Thompson agrees to pay Fred Conrad a commission of $200 per house and lot as commission for sale of each house and lot, and no more."

On March 3, 1952, the defendants served written notice on the plaintiff that his agency for the handling or sale of this property was thereby terminated. The defendants, through a title company, took the necessary proceedings before the Riverside Planning Commission and the State Real Estate Commissioner to subdivide the property and to permit sales of lots therein to be made. The final report of the Real Estate Commissioner was dated May 19, 1952. Thereafter, the defendants proceeded to build homes and sell the lots in this subdivision.

The plaintiff later brought this action, relying on the paragraph above quoted as constituting a contract for his benefit. An amended complaint, filed on January 9, 1953, alleged that this land had been subdivided and 50 houses and lots had been sold; that the plaintiff was at all times ready, willing and able to perform his duty with respect to an exclusive handling of the sale of houses and lots as contemplated in the contract; that the defendants had wrongfully refused to permit him to sell said houses and lots, and wrongfully prevented him from performance; and that he had been damaged in the sum of $10,000. The answer denied the material allegations of the complaint, and alleged as a further defense that in consideration of being thus named in this contract as exclusive agent for the sale of these lots, the

plaintiff verbally agreed with the defendants that he would invest the sum of $5,000 and become a limited partner in this venture; that the plaintiff failed and refused to invest $5,000 or any part thereof in said project; and that on March 3, 1952, his agency for the handling or sale of said property was terminated by the defendants.

After a trial, the court found that the defendants proceeded to subdivide said property into 50 lots, upon which houses were erected; that all 50 of said houses and lots were sold; that it is not true that the plaintiff has at all times been ready, willing and able to perform the duty of exclusive handling of said property, and handling the sale of said houses and lots as contemplated in the contract; that it is not true that the defendants have wrongfully refused to permit the plaintiff to sell said houses and lots, or have wrongfully prevented him from performing; that it is true that in consideration of being named as the real estate broker for the sale of the lots and property described in this contract the plaintiff verbally agreed with the defendants that he would invest the sum of $5,000, and become a limited partner in this project; that the plaintiff failed and refused to invest $5,000, or any part thereof, in said project; that on March 3, 1952, his agency for handling or selling said property was terminated by the defendants; and that it is not true that the sum of $10,000, or any amount, is due to the plaintiff. Judgment was entered in favor of the defendants, and the plaintiff has appealed.

The appellant contends that the court should have found that a contract for his benefit as a third party existed in this case; that there was no evidence showing that he was not at all times ready, willing and able to perform his duty thereunder; and that the court should have found, as a matter of law, that there was no effective rescission "of the third party contract." With respect to the matter of rescission, it is argued that a rescission could only be effected by the action of both the seller and the buyer named in the contract; that the attempted rescission or revocation was made by the buyer alone, and no such attempt was made by the seller, Gilmore; that the contract could not be rescinded or revoked after the third party beneficiary had acted upon the contract which was made for his benefit; and that the appellant, prior to March 3, 1952, had done certain things in the nature of preliminary work looking to the subdivision

of the property, and had talked to many persons who might become potential buyers.

 The paragraph upon which appellant relies rather clearly appears to relate to a matter which is separate and apart from the purpose and object of the purchase and sale contract, of which it was a part. That paragraph had nothing to do with the contract of sale itself, which was the real object of the contract. While the contract provided for the subdivision of the property and the sale of individual lots, the seller had no interest in the arrangements made by the buyer for the sale of such lots. This is indicated by the terms of the contract itself and confirmed by the seller's testimony at the trial. The paragraph itself states that it shall be "in lieu of" any other agreement with the appellant. The only reasonable interpretation is that this provision was intended as a substitute for, and to avoid the necessity of, any other writing which would otherwise be required for the collection of a broker's commission. It was nothing more than such a written memorandum or listing, which was severable or divisible from the purchase and sale agreement entered into by the other parties. Whether a contract is severable or entire depends largely on the intention of the parties and the object of the contract. (*Sweet* v. *Watson's Nursery*, 23 Cal.App.2d 379 [73 P.2d 284].) It sufficiently appears here that this portion of the contract was severable from the remainder.

 Having no interest in this severable portion of the contract of purchase and sale the seller had no interest in the rescission or termination of that part of the contract, and his participation or concurrence in the notice of rescission given by the respondents was not essential in order to terminate that part of the contract. Nor was it essential that the respondents rescind or terminate the entire contract of sale or give up their rights as purchasers of the property. As was said in *Simmons* v. *California Institute of Technology*, 34 Cal.2d 264 [209 P.2d 581]:

"Although the general rule undoubtedly is that one must rescind all of his contract and may not retain rights under it which he deems desirable to have and repudiate the remainder of its provisions, there are certain exceptions where the circumstances justify a rescission only as to particular matters or particular parties involved in an entire transaction."

 There was some evidence that the appellant lost his best salesmen, and did not have the organization required

for this work. The evidence also shows that nothing material was done by him toward performing his agreement before the contract was terminated by the respondents. The appellant's testimony in this regard was vague and unsatisfactory, and related to claimed assistance in subdividing the property. He had nothing to do with this, under the contract, and the respondents paid a title company to handle that matter for them. He could not legally sell any lots until after May 19, 1952, and he testified that he did nothing after the notice of termination was given him on March 3.

The court's findings of a failure of consideration, which were fully supported by the evidence, furnish a further reason why the appellant was not entitled to recover. ▮ Where a contract for the benefit of a third party exists, such a party is subject to the ordinary rules governing a party to a contract. Section 1689 of the Civil Code provides that a party to a contract may rescind the same "If, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part; . . ." ▮ Three witnesses testified that before the contract of sale was entered into the respondents told the appellant that they would not give him an exclusive selling agency unless he invested $5,000 in the project, and there was ample evidence that he agreed to do this and later failed and refused to do so. No contention was made at the trial, or is made here, that the appellant invested any money in this subdivision or had the willingness or ability to do so. The court's finding that the appellant was not ready, willing and able to perform his duty as contemplated in the contract is sustained by the evidence.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.