[Civ. Nos. 19661, 19662. First Dist., Div. One. May 21, 1963.]

EUGENE A. TALIAFERRO, Cross-complainant and Appellant, v. DOROTHY DAVIS, Cross-defendant and Respondent.

(Two Cases.)

Eugene A. Taliaferro, in pro. per., for Cross-complainant and Appellant.

Frisbie & Hoogs and W. H. Hoogs for Cross-defendant and Respondent.

MOLINARI, J.—These are appeals from judgments in two separate actions involving the same parties and identical issues. They are particularly concerned with the cross-complaint filed in each of said actions by appellant, Eugene A. Taliaferro, against his former wife, respondent, Dorothy Davis, also known as Dorothy Taliaferro. This is another of a long list of appeals arising from the 1944 divorce of the parties. ■ As stated by this court in *Taliaferro* v. *Taliaferro*, 200 Cal.App.2d 190 [19 Cal.Rptr. 220]: "The interests of justice and the equities of the case require us to take judicial notice of related prior proceedings."[1] (P. 191; citing *Watson* v. *Los Altos School Dist.*, 149 Cal.App.2d 768, 772 [308 P.2d 872], and listing each of said proceedings in the footnote; see also *Taliaferro* v. *Taliaferro*, 178 Cal.App.2d 140, 142 [2 Cal.Rptr. 716]; and *Flores* v. *Arroyo*, 56 Cal.2d 492, 496 [15 Cal.Rptr. 87, 364 P.2d 263].)

The previous appeals disclose the following background: On January 3, 1944, respondent obtained an interlocutory decree of divorce from appellant pursuant to which a final decree was entered on January 10, 1945. The said parties had entered into a property settlement agreement, dated December 1, 1943. On September 19, 1949, there was entered, in

[1] See also *Taliaferro* v. *Taliaferro*, 171 Cal.App.2d 1 [339 P.2d 594], and *Taliaferro* v. *Taliaferro*, 180 Cal.App.2d 159 [4 Cal.Rptr. 696]; and see also the following subsequent appeals: *Taliaferro* v. *Taliaferro*, 203 Cal.App.2d 642 [21 Cal.Rptr. 864]; *Taliaferro* v. *Taliaferro*, 203 Cal.App.2d 649 [21 Cal.Rptr. 868]; *Taliaferro* v. *Davis*, 211 Cal.App.2d 229 [27 Cal.Rptr. 152].

the superior court having jurisdiction over said divorce action, an order that said agreement was not merged in said interlocutory and final decrees of divorce and that said court was without jurisdiction to make an order modifying the terms of said agreement. No appeal was taken from said order. In a separate action commenced on September 29, 1949, respondent recovered arrearages provided for in said agreement,[2] the trial court finding that the agreement was unmodifiable on the basis that it was made for the purpose of providing a division of property, rather than alimony and maintenance. These findings were found to be amply supported, and the judgment was affirmed in *Taliaferro* v. *Taliaferro,* 125 Cal.App.2d 419 [270 P.2d 1036].[3] Additional amounts due under the agreement were recovered by respondent in a subsequent action commenced by her against appellant. Judgment in her favor was affirmed on appeal. (*Taliaferro* v. *Taliaferro,* 154 Cal.App.2d 495 [316 P.2d 393].) Thereafter, in *Taliaferro* v. *Taliaferro,* 171 Cal.App. 2d 1 [339 P.2d 594], this court was called upon to review the action of the superior court in refusing to enter a default judgment for appellant pursuant to a complaint which, among other things, contained substantially the same allegations as those made in count one of the two complaints now before us. In that action appellant sought to vacate the " 'court's action' " in approving the aforesaid property settlement agreement on the ground that said agreement was against public policy in that he was induced to sign said agreement " 'to persuade' " respondent to proceed with a divorce action she filed on September 7, 1943, in Contra Costa County, and " 'to secure a divorce decree without contest.' " (P. 4.) Appellant also alleged in his complaint in said action that he was induced to sign the agreement by fraud in that respondent concealed the fact that long prior to the settlement agreement she had obtained, on July 7, 1932, an interlocutory decree of divorce in the Superior Court of San Francisco which did not provide for alimony and support; and asserted, further, that the " 'existence' " of the earlier decree was " 'concealed from' " him until December 1954, when he learned of the 1932 decree. (P. 4.) The reviewing

---

[2]Paragraph "Seventh" of said agreement provides that appellant agrees to pay $350 per month to respondent for the support of herself and the two minor children of the parties.

[3]The validity of said agreement was not attacked by appellant in said action in any way; he sought, instead, a declaration of his rights and duties thereunder.

court agreed with the lower court that the counts containing these allegations did not state a cause of action. The holding was predicated upon the grounds that the complaint disclosed that appellant had information as to the filing of the 1932 action, but did not follow through on said action, his own complaint not alleging any lack of service of himself as to that action; that the fact that respondent may have sued a second time to determine a matter already barred by res judicata does not constitute a fraud on the court, res judicata being a defense that was waived by appellant when he did not raise it; and that the property settlement agreement was not violative of public policy as being " 'promotive of divorce' " (p. 7) ; and that if it were against public policy appellant could not attack it because he was *in pari delicto.*

Appellant then brought two separate actions respectively challenging the validity and the effect of the aforesaid judgments for arrearages. A demurrer to each of said complaints was sustained without leave to amend. The judgments entered upon said demurrers were affirmed on appeal. (*Taliaferro* v. *Taliaferro, supra,* 178 Cal.App.2d 140; *Taliaferro* v. *Taliaferro,* 178 Cal.App.2d 146 [2 Cal.Rptr. 719].)[4] Appellant then brought two actions for declaratory relief for adjudication of his rights under said agreement. A motion for summary judgment therein was denied appellant on the basis of res judicata, and appeals from said adverse judgments were affirmed. (*Taliaferro* v. *Taliaferro,* 179 Cal.App.2d 787 [4 Cal.Rptr. 689].) A judgment denying appellant's motion to modify the final decree of divorce was also affirmed in *Taliaferro* v. *Taliaferro,* 180 Cal.App.2d 44 [4 Cal.Rptr. 693], and a penalty was assessed against him for taking a frivolous appeal. Appellant also brought an action to set aside the said property settlement agreement and to have declared void an order which set aside an earlier order modifying the agreement. He appealed from an adverse judgment predicated on res judicata and the judgment was affirmed in *Taliaferro* v. *Taliaferro,* 180 Cal.App.2d 159 [4 Cal.Rptr. 696].

The following background facts also appear: During the marriage appellant owned and operated an automobile wrecking, repairing and new and used parts business known as Davis Auto Exchange. This business and a number of parcels of real estate, some occupied by the business and some not, were agreed in said property settlement agreement to be

---

[4]Each of these appeals was held to be frivolous and penalties assessed.

community property. It was also provided in said agreement that said business was to remain under the management and control of appellant and that he was to be entitled to all the profits from the operation thereof. The agreement provided that the value of said business and the premises upon which it was located was $20,000 and that in the event of the sale of said business respondent was to receive $10,000. The agreement also provided that appellant was to receive the rentals from all the real property, and that in the event of the sale of any of the real estate each of the parties was to receive half of the proceeds of the sale of each piece of realty.[5] It appears that respondent had execution issue on the judgments obtained by her for the arrearages aforementioned and that she caused the writ to be levied on the Davis Auto Exchange and upon certain other parcels of said real property. It also appears that respondent bought in the property levied upon at the execution sale and thereafter notified the tenants to pay rent to her. Thereafter, and on October 21, 1959, appellant filed a motion in the divorce action seeking the following: (a) an injunction against alleged interference by respondent with appellant's ownership and management of property covered by the agreement; (b) an order modifying the final decree of divorce and the property settlement agreement because of "substantial breaches" by respondent; (c) $20,000 actual damages against respondent for the above interference and $50,000 punitive damages "for abuse of process for the aforesaid breaches"; (d) restitution of rentals allegedly collected by respondent; and (e) a decree that there has been a failure of consideration in the agreement. At the hearing of the motion, oral and documentary evidence was received. The court thereupon denied the motion "upon the grounds that the matters attempted to be raised are res judicata, and the motion is also denied upon the merits." This order was affirmed on appeal. (*Taliaferro* v. *Taliaferro*, *supra*, 200 Cal.App.2d 190.) It appears further that appellant moved to vacate the execution sale pursuant to the writ of execution issued upon the judgment obtained against him by respondent.[6] The motion was denied by the trial court, appellant thereupon appealed, and the order appealed from was affirmed. (*Taliaferro* v. *Taliaferro*, 203 Cal.App.2d 649 [21 Cal.Rptr. 868].)

[5] The agreement was so construed in *Taliaferro* v. *Taliaferro*, 203 Cal. App.2d 642 [21 Cal.Rptr. 864].

[6] The Davis Auto Exchange property was included among the properties levied upon and sold pursuant to said writ of execution.

With this background we approach the consideration of the present cases. Each involves an interpleader action by tenants of the property levied upon seeking a determination as to whether they should pay rent to respondent or to appellant. We are not here concerned with said interpleader actions, but with the cross-complaints filed therein by appellant against respondent.

The cross-complaint in action No. 78069 (Contra Costa Superior Court) is in three counts. The first count sets out the 1943 property settlement agreement between the parties and alleges that pursuant to a writ of execution respondent caused the Davis Auto Exchange property to be sold at public auction; that respondent bought the property levied upon at the auction; that as a result of said sale the consideration for the said property settlement agreement was destroyed; and that the said agreement was entered into in contemplation of divorce and therefore was against public policy. The second count alleges that respondent served notices upon the tenants of the Davis Auto Exchange property to thereafter pay the rentals to her; that the tenants have refused to pay rent to respondent or anyone; that as a result thereof the tenants have become confused; that these acts were done maliciously; and that appellant has been damaged in the sum of $5,000. In the third count appellant alleges that for the purpose of redeeming the said property sold at execution sale he demanded a verified statement of all the rentals collected by respondent; that respondent has failed to render such statement for a period of more than 30 days following such demand; and that he is entitled to an accounting. By his said cross-complaint, appellant prays that the said property settlement agreement be declared void, that he have compensatory damages in the sum of $5,000 and punitive damages in the sum of $10,000; and that he have an accounting from respondent of the rentals collected by her.

The cross-complaint in action No. 78385 (Contra Costa Superior Court) is also in three counts. The first count sets out the 1943 property settlement agreement between the parties, and alleges: that said agreement was made in contemplation of divorce and that the respondent could never have obtained a divorce if there had been a contested trial for the reason that she had led a life of debauchery for 10 years prior thereto,[7] and for the further reason that respondent had obtained a previous and still subsisting interlocutory decree

---

[7] Several specifications of such conduct are set forth.

of divorce in the San Francisco Superior Court, the existence of which she did not disclose in the subsequent Contra Costa County divorce action wherein the parties were divorced; that said agreement provides that the appellant has the right to collect all rentals from community property consisting of the Davis Auto Exchange and the property upon which the same is located; that pursuant to a writ of execution respondent caused the Davis Auto Exchange property to be sold at public auction; that respondent became the purchaser of said property; that respondent served notice upon the tenants of the property to pay the rentals to her; that for that reason the tenants have refused to pay the rents to appellant; that the conduct of respondent has destroyed the consideration for said property settlement agreement; and that appellant signed said agreement solely to manage the community property and without any consideration therefor. The second count alleges that because of the notices served by respondent on the tenants as aforesaid they have become confused and have refused to pay rent to appellant or to anyone; that said acts have been done maliciously; and that as a result of such interference by respondent, appellant has been damaged in the sum of $5,000. In the third count are contained allegations concerning said execution sale and the fact that respondent became purchaser at said sale. It is therein alleged that within one year from said sale appellant, for the purpose of redeeming said property, made a written demand of respondent that she render him a verified statement of all rentals collected from said premises, and that respondent refused and failed to do so for a period of more than 30 days from such demand. Appellant by his said cross-complaint prays that the property settlement agreement be declared null and void and cancelled; that he be awarded $5,000 compensatory and $10,000 punitive damages, and that he have accounting of the rentals collected by respondent together with the amount paid for taxes and assessments; and that if the amount of rental received exceeds the amounts paid for taxes and assessments such excess be applied to the redemption of said property by appellant.

Respondent was served with copies of said cross-complaints and the summonses issued on the cross-complaints. She did not plead or respond thereto and her default was thereupon entered. Default hearings were thereafter had on said cross-complaints.[8]

---

[8]Section 585 of the Code of Civil Procedure provides that in actions

The hearing in action No. 78069 was held on April 7, 1960, and that in action No. 78385 on May 12, 1960. Both matters were heard by the same trial judge. In the first proceeding considerable colloquy took place between the court and appellant concerning the first and second causes of action. In the course of this colloquy the trial court expressed the opinion that it would take judicial notice of the prior litigation and the appellate decisions concerning the 1943 property settlement agreement. The trial court thereupon permitted appellant to file a written statement in evidence, stating that the same was being received as if appellant was orally testifying thereto. The said statement makes reference to the aforesaid divorce action and asserts: that appellant and respondent entered into the aforesaid property settlement agreement in contemplation of divorce; that respondent would not have been able to get a divorce if her behavior had been known by the court; that she committed a fraud on the court in failing to inform the court of a prior action for divorce; that respondent would not have been able to secure a divorce if the action had been contested by appellant for six separate specified reasons. The said statement also makes reference to certain provisions of said agreement including the provisions with respect to the Davis Auto Exchange; alludes to the aforesaid judgment for arrearages obtained by respondent, the levy of execution thereon, the purchase by respondent of all the interest of appellant in the community property covered by said property settlement, and the notification by respondent to the tenants of the property levied upon that by virtue of said execution sale all rents were to be paid to her or to her attorney. The statement then recites that the appellant depended upon said rents to make payments upon notes secured by deeds of trust on said property, and that by reason of said rents not being paid to him he has been unable to make the payments due on said notes and has been unable to pay current taxes and insurance. Appellant also states therein that defaults have been entered against said property by the holders of said notes and deeds of trust and that an immediate sale of said property is threatened by said holders within

---

where the defendant fails to answer the complaint (other than actions arising upon contract for the recovery of damages only) the plaintiff may, after the default of the defendant has been entered, apply to the court for the relief demanded in the complaint.

Section 580 of the Code of Civil Procedure provides that the relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint.

90 days. The further assertion is made that the tenants have refused to pay appellant by reason of the notice given by respondent, which notice states that the said tenants would be evicted if they did not pay the rent directly to the respondent. The statement then asserts that ''as a result of such interference'' he has lost rentals which he details and which aggregate $15,345. The said statement concludes with the following legal conclusion: ''The sale of all the assets of the Davis Auto Exchange to the cross defendant herein destroyed all consideration given by the cross defendant to the cross complainant for the signing of the agreement of December 1st, 1943, so that there has been a complete failure of consideration for the signing of the agreement of December 1st, 1943.'' The trial court thereupon ordered the matter submitted.

When action No. 78385 came on for hearing on May 12, 1960, appellant was sworn as a witness and colloquy of substantially the same nature as that in the previous hearing ensued between the court and appellant, and contentions were made by appellant that the instant litigation involved new facts which had transpired since the previous adjudications with reference to the property settlement agreement. The only testimony adduced from the appellant was the answer ''Yes, they are, Your Honor'' to a question put by the court to appellant as to whether ''All the matters contained in this complaint are true and correct?''

On June 21, 1960, the trial court rendered its judgment in both actions. In action No. 78069 (the first default proceeding) the trial court ordered and decreed that appellant recover from respondent ''the sum of no dollars and no relief whatsoever as prayed for in said cross-complaint.'' In action No. 78385 (the second default proceeding) the trial court ordered and decreed that appellant recover from respondent ''the sum of no dollars and no relief whatsoever as prayed for in Counts one (1) and two (2) of said cross-complaint.''[9] Appellant has appealed from both judgments.

Generally speaking, the party who makes default thereby confesses the material allegations of the complaint. (*Csordas* v. *United Slate Tile etc. Roofers,* 177 Cal.App.2d 184, 186 [2 Cal.Rptr. 133].) It is also true that *where a cause of action is stated* in the complaint and evidence is introduced to establish a prima facie case the trial court may not disregard the same, but must hear the evidence offered by

[9]The trial court made no reference to count three (3) of the cross-complaint.

the plaintiff and must render judgment in his favor for such sum, not exceeding the amount stated in the complaint, or for such relief, not exceeding that demanded in the complaint, as appears from the evidence to be just. (*Csordas* v. *United Slate Tile etc. Roofers, supra,* p. 186; 28 Cal.Jur.2d, § 31, p. 653; Code Civ. Proc., §§ 580, 585, subd. 2.) ▊ It is established law, however, that where a complaint does not state a cause of action or where it shows no grounds for relief, the default of the defendant does not improve it, because, as stated in *Williams* v. *Foss,* 69 Cal.App. 705 [231 P. 766]: "The default admitted nothing more than was alleged in the complaint. Under such circumstances, the fact that before entering the judgment the court received some evidence does not put the case on the basis of an action tried upon complaint and answer, wherein, as sometimes happens, the court hears evidence relating to an essential fact which had been omitted from the complaint." (Pp. 707-708; see *Taliaferro* v. *Taliaferro, supra,* 171 Cal.App.2d 1, 9; 28 Cal.Jur.2d, § 36, p. 660.)

▊ The lower court was entitled to take judicial notice of all the related prior proceedings in its court involving the litigation between appellant and respondent as well as the decisions of the appellate courts of this state relative to such proceedings. (*Flores* v. *Arroyo, supra,* 56 Cal.2d 492, 496; *Taliaferro* v. *Taliaferro, supra,* 178 Cal.App.2d 140, 142; *Taliaferro* v. *Taliaferro, supra,* 200 Cal.App.2d 190, 191.) ▊ Moreover, the final judgment in each of the prior related cases is conclusive as to the relief granted and also as to the relief denied or withheld. (*Riddle* v. *Fiano,* 194 Cal. App.2d 684, 695 [15 Cal.Rptr. 248].) ▊ Although respondent, having defaulted, did not, therefore, plead the former adjudications by way of answer, res judicata was nevertheless applicable where appellant himself affirmatively set forth certain of these former judgments, each of which in turn was related to other adjudications passed upon by the trial courts of the Contra Costa Superior Court and the appellate courts of this state, and thus placed the matter of the former adjudications squarely before the court in his pleadings and in his arguments to the court. (*Riddle* v. *Fiano, supra,* pp. 695-696.)

It is clear, therefore, that in attacking the validity of the 1944 divorce, the 1943 property settlement agreement, the judgments for arrearages, the writ of execution on said latter judgments, the levy of said writ and the sale pursuant

thereto, appellant is attempting, once again, to exhume issues long ago put at rest.

Stripped of their nonessentials the first two counts of the respective complaints purport to state a cause of action predicated upon the following state of facts: that the parties entered into property settlement agreement whereby appellant agreed to make certain payments; that appellant did not make these payments; that respondent thereupon brought suit upon the agreement for these payments and recovered judgment thereon; that she levied execution upon the interest of appellant in the Davis Auto Exchange property, which, under the agreement, was to remain under the management and control of appellant who was entitled to receive all the rents and profits thereof; that respondent purchased the interest of appellant under execution sale and thereafter advised the tenants of said property to pay the rent to her.

Aside from the assertions as to the invalidity of the agreement and the 1944 divorce decree, which we dispose of on the basis of res judicata, the core of these appeals is simply the contention that there has been a failure of consideration. The gist of appellant's argument is that, by securing the writ of execution and causing a sale of the property in question, respondent destroyed the consideration for the 1943 agreement. Appellant supports his position by quoting from *Taliaferro* v. *Taliaferro, supra,* 125 Cal.App.2d 419, where the reviewing court, in discussing the meaning of the 1943 agreement, said: "The wife agreed upon a valuation of her half share of the business when and if it should be sold; she agreed to the receipt of all rentals from the real property and all profits from the business by the husband. She was to be entitled to receive one-half the proceeds of any realty sold, *but she had no right to force a sale of any of it,* hence in effect she gave the husband a life estate in the wife's share of the community property." (P. 427; italics added.) Comfort is taken by appellant from the language which we have *italicized,* it being his contention that by "forcing" a sale through the process of execution respondent wife has breached the 1943 agreement and thus destroyed the consideration for its execution.

"Failure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party." (*Bliss* v. *California Cooperative Producers,* 30 Cal.2d 240, 248 [181 P.2d 369, 170 A.L.R. 1009].) The failure may arise from the wilful breach

of the promise. (*Bliss* v. *California Cooperative Producers, supra.*) ▮ In *Bliss* we find approval of the following principle stated in *Richter* v. *Union Land etc. Co.*, 129 Cal. 367 [62 P. 39]: "In all executory contracts the several obligations of the parties constitute to each, reciprocally, the consideration of the contract; and a failure to perform constitutes a failure of consideration — either partial or total, as the case may be — within the meaning of section 1689 of the Civil Code."[10] (P. 372.) (See also *Bray* v. *Lowery*, 163 Cal. 256, 260 [124 P. 1004]; *Benson* v. *Andrews*, 138 Cal. App.2d 123, 132 [292 P.2d 389].) ▮ Failure of consideration does not, however, vitiate the contract from the beginning; until rescinded or terminated a contract once in effect remains in effect. (*Scheel* v. *Harr*, 27 Cal.App.2d 345, 352 [80 P.2d 1035].) This last principle rests upon the distinction that failure of consideration is based, not upon facts existing at the time the mutual promises bargained for in a bilateral contract are made, but upon some fact or contingency which occurs between the time of the making of the contract and the action which results in the material failure of performance by one party. (*Benson* v. *Andrews, supra*, p. 132.)

▮ As provided for in section 1689 of the Civil Code, failure of consideration authorizes a rescission. (*Crofoot Lumber, Inc.* v. *Thompson*, 163 Cal.App.2d 324, 332 [329 P.2d 302]; *Conrad* v. *Thompson*, 137 Cal.App.2d 73, 77 [290 P.2d 36].) ▮ It is also a defense to action for breach of a bilateral contract. (*Bliss* v. *California Cooperative Producers, supra*; *Benson* v. *Andrews, supra.*) In *Bray*, failure of consideration was held to be a proper basis for an action for money had and received. While section 1689 deals with rescission, the meaning of failure of consideration, as provided for in that section, has been applied, under the rule announced in *Richter* v. *Union Land etc. Co.*, 129 Cal. 367 [62 P. 39], to cases not founded upon the exercise of the right of rescission. (See *Bray* v. *Lowery, supra*, p. 260; *Benson* v. *Andrews, supra*; *Bliss* v. *California Cooperative Producers, supra.*)

[10]Civil Code section 1689 provides: ". . . (b) A party to a contract may rescind the contract in the following cases. . . . (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds. (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause. (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause. . . ."

■ Accordingly, the rationale of the cases dealing with failure of consideration is that where the consideration fails in whole or in part through the fault of a party whose duty it is to render it, the other party may invoke such failure as a basis for rescinding or terminating the contract, provided the failure or refusal to perform constitutes a breach in such an essential particular as to justify rescission or termination. (12 Cal.Jur.2d, Contracts, § 204, p. 422; *Crofoot Lumber, Inc.* v. *Thompson, supra,* pp. 332-333.) The right of the injured to claim release from obligations and thus to elect to terminate the contract depends, as stated in *Crofoot,* "upon the gravity of the breach." (P. 332.)

■ In the case at bench, there has been no attempt on the part of appellant to rescind, nor has he invoked failure of consideration defensively. His attack is an affirmative one, by way of an action seeking to cancel the 1943 agreement. We have no doubt that failure of consideration may be invoked affirmatively in a proper action, but this is not such action because there has been no refusal or failure on the part of respondent to perform her part of the agreement. Such failure lies with appellant, who has not made the payments provided for in the agreement. Respondent has been required to bring actions for the recovery of such payments and has recovered judgment therefor. To now contend that respondent has "breached" the agreement because she has enforced appellant's obligation under the agreement to the extent provided for by law is an absurdity. While respondent was precluded by the 1943 agreement from compelling a partition of the Davis Auto Exchange property or from selling her interest in such community property because of the life estate of appellant therein, such inhibition did not prevent respondent from satisfying a debt due from appellant against *his* interest in the property. In such respect respondent wife was in no different position than any other creditor of appellant who might seek to enforce a judgment by means of a writ of execution.

■ Respondent, as the purchaser of the Davis Auto Exchange property upon its sale under execution, became substituted to and acquired all the right, title, interest and claim of appellant thereto on the date of the levy of the execution thereon (Code Civ. Proc., § 700), and, as such purchaser, she was entitled to receive from the tenants in possession the rents or profits from the property sold from the time of sale until redemption. (Code Civ. Proc., § 707.) There was no allega-

tion by appellant in the subject counts that respondent has collected any rents, but merely that she served notices upon the tenants that they should pay rent to her with the result that the tenants are "confused, and refused to pay anyone." On its face each of the cross-complaints discloses that respondent was entitled to the rents in question, and, accordingly there is no justification to the claim that respondent interfered with the tenants.

We note, moreover, that the statement offered in evidence by appellant, in support of the respective first and second counts, (offered only in the first default hearing) when stripped of all extraneous matters, consists of no more than the bare untenable legal conclusion that the execution and execution sale constituted breaches resulting in a failure of consideration. Under the circumstances there was nothing before the trial court but counts which in each instance failed to state a cause of action.

The third count in each of the cross-complaints seeks an accounting under Code of Civil Procedure section 707. This section authorizes a redemptioner to bring an action to compel an accounting and disclosure of the rents and profits received by the judgment creditor from the time of the sale upon demand by the judgment debtor, provided such demand is made prior to the expiration of the time allowed for redemption. In the present case the allegations of the respective third counts merely state that within the time allowed for redemption appellant made a demand in writing of respondent for a written and verified statement of the rents collected by her, and that respondent failed and refused for a period of more than 30 days subsequent to such demand to render such statement. No evidence in support of these counts was presented at either of the default hearings. We, accordingly, have no allegation or showing that respondent went into possession of the subject property or that she collected any rents;[11] nor was there any allegation or showing that such an accounting was not in fact rendered, except the bare allegation that such an accounting was not furnished "for a period of more than thirty days subsequent

[11]No part of Count 2 was made a part of Count 3. The two counts are not inconsistent, however. Count 2 states that the tenants have not paid rent to anyone. In the absence of any other showing the court was entitled to assume in a default hearing that the allegations of Count 2 were true, as it was required to do, in ascertaining whether said Count 2 stated a cause of action.

to said demand. . . ." In our opinion the said third counts fail to state a cause of action for an accounting, but, assuming, *arguendo,* that they do, no effort was made by appellant at the respective hearings to satisfy the court that he was entitled to such an accounting. As we have hereinabove noted, the trial court did not enter judgment on the third count in action No. 78385. Under the state of the pleadings and the failure to adduce any evidence on said count, the trial court should have likewise found for respondent on that count.

The judgments are affirmed with directions to the trial court to enter judgment for the cross-defendant on Count 3 in Contra Costa Superior Court Action No. 78385.

Bray, P. J., and Sullivan, J., concurred.