Filed 3/11/14  Ra.D. v. Ryan M. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RA. D., | B248391 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BF035475) |
| v. | |
| RYAN M., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert E. Willett, Judge.  Affirmed.

Ra. D., in pro. per., for Plaintiff and Appellant.

Ryan M., in pro. per., for Defendant and Respondent.

_____

The parties to this appeal are the parents of R. D., who was a dependent of the juvenile court in 2009-2010. The exit order gave physical and legal custody to R.'s father, respondent Ryan M. (Father), and authorized supervised visitation for his mother, appellant Ra. D. (Mother). Mother claims that the family court is improperly following the juvenile court's custody and visitation orders. We affirm.

## FACTS[1]

Mother gave birth to R. in August 2008, and had custody of him until November 2009. She and Father are not married or in a relationship. According to a pediatric neurologist, R.'s birth weight was six pounds, 12 ounces. At 21 months, R. weighed 17 pounds, eight ounces, which is below the fifth percentile for his age. His head circumference declined. The neurologist believed that R.'s "failure to gain weight has affected his brain growth which can lead to long-lasting handicaps."

Mother informed Father that R. was not ready for solid foods at six months, though this is normally when solid foods are introduced. R. was underweight, unable to lift his head, and had missed major milestones. Mother felt that R. developed an allergic rash every time she introduced baby food to his diet. In September 2009, an occupational therapist concluded that R. was developmentally delayed and functioned at the level of a six-month-old.

During an appointment with a nutritionist, Father accused Mother of starving R. The nutritionist contacted the Department of Children and Family Services (DCFS) to report that Mother was neglecting R. R. was diagnosed at a UCLA clinic with failure to thrive due to "environmental" causes. Mother took R. to an allergist: skin and blood tests performed on R. showed no allergies.

At a DCFS team decision meeting in November 2009, Mother was informed that she had withheld food from R., who was detained from her custody. Social workers

---

[1]    Like the trial court, we take judicial notice of the underlying dependency case because it is a related proceeding leading to the present appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *Taliaferro v. Davis* (1963) 216 Cal.App.2d 398, 401.)

suggested that Mother has Munchausen's Syndrome by Proxy and food phobias. Placed in Father's custody, R. began to gain weight, crawl and stand up. After six months with Father, R. had made great strides, though his weight remained suboptimal. A doctor at UCLA's Failure to Thrive Clinic reported that R. was tested for gastrointestinal illnesses and thyroid and immunologic deficiencies; all testing was normal. Genetic consultants agreed that R.'s poor weight gain and delays are likely due to the poor nutrition he received in the past.

DCFS filed a petition on R.'s behalf, which the juvenile court sustained on the grounds that Mother willfully and intentionally failed and refused to properly feed R., resulting in undernourishment and developmental delay. The child's failure to thrive is due to environmental, not organic causes. Mother's failure to feed R. endangers the child's physical and emotional health and safety and places him at risk of harm. The juvenile court heard testimony from medical experts, a nutritionist, a lactation consultant, social workers, and R.'s parents.

Mother was denied reunification services. Father was deemed to be a nonoffending parent who was not residing with R. when the child was brought within the court's jurisdiction. On August 10, 2010, the juvenile court terminated jurisdiction, giving Father legal and physical custody of R. Mother was authorized to visit R. for four hours per week, under the supervision of a professional monitor or a monitor approved by Father. The exit order states, "This order shall not be modified unless the [Family] Court finds that there has been a significant change of circumstances and the modification is in the best interest of the child."

Soon after the juvenile court terminated jurisdiction, Mother asked the family court to modify the order. Mother accused Father, DCFS, and R.'s health care providers of engaging in a false and concerted "bandwagon" to deprive her of her parental rights by telling the courts that R. has no special needs and that Mother has mental health issues.

Mother claimed that DCFS discriminated against her on the basis of her race, country of origin, and disability.[2]

Mother submitted a letter dated September 23, 2010, from pediatrician Diane Cullinane, who stated that R.'s failure to thrive and eating difficulties had caused significant developmental delays. She noted that R.'s weight was low for the first 12 months, with a slight increase between 12 and 19 months. Dr. Cullinane believed that R. was not neglected by Mother and requires a feeding assessment and an evaluation to rule out endocrine, genetic, gastrointestinal, and neurologic disorders. By contrast, a June 29, 2010 letter from a nutritionist indicates that Mother has "phobias surrounding food" and fabricated food allergies for R.

On November 1, 2010, the family court denied Mother's first request for unmonitored visitation. It wrote that the juvenile court order must be followed because it "is still recent." The court also found that Mother owes Father $10,088 in child support arrearages. Mother stipulated that she would pay up to $35 per hour for a monitor and Father would pay for charges in excess of $35.

Mother renewed her request for custody in early 2011. She submitted reports from a professional monitor showing that Mother and R. enjoy their time together: R. smiles and laughs with Mother, who expresses her love to him. The monitor described R.'s hearty appetite and enthusiastic playing of games; he has not observed any inappropriate behavior during visits. Mother asked the court to terminate the requirement of a paid monitor, to increase the amount of time she spends with R., and to award her attorney fees. Mother renewed her complaint that DCFS and the juvenile court acted unethically to declare her an unfit parent.

On April 13, 2011, Division Eight of this district affirmed the juvenile court's jurisdiction and disposition orders. (B226700 [nonpub. opn.].) The opinion states that the juvenile court properly exerted jurisdiction over R., who "was badly malnourished

---

[2]    Mother does not disclose the nature of her disability.

4

and significantly developmentally delayed in mother's care and steadily improved in father's care." The testimony of Mother's two medical experts that Mother was not responsible was discounted because "the opinions were based on insufficient information." The opinion also states that Mother's due process rights were not violated when the juvenile court denied her request to have R. subjected to more testing for physical and genetic abnormalities. The appellate panel found substantial evidence to support the disposition order giving Father sole custody: R. was healthy at birth, failed to thrive in Mother's custody, made significant gains in Father's care, but Mother did not acknowledge her role in R.'s problems and continued to give R. only low-calorie foods.

In a April 20, 2011 filing, Mother acknowledged that her appeal was rejected, but argued that the appellate decision was based on records supplied by DCFS, which contained fabricated evidence "to make me look unfit." Mother declared that she has completed 34 visits with R. since November 2010. In October 2011, Mother petitioned the family court to hear the issue of unmonitored visits, allow for make-up visits, increase visitation time, set a holiday schedule, and address Father's alleged misconduct.

On December 8, 2011, the trial court denied Mother's request for unmonitored visitation and maintained the requirement that her visits be monitored by a professional or by a third party approved by Father. The court gave Mother increased visitation; the cost of paying for the monitor was unchanged. The court ordered a child custody evaluation. Eleven days later, the court rescinded its order for an evaluation because Mother's only reason for changing the custody order was that the juvenile court was wrong, which cannot form the basis for a custody evaluation.

On April 18, 2013, the trial court entered a judgment following a contested hearing. Mother did not provide this Court with a transcript of the hearing. The judgment gives Mother supervised visitation with a professional monitor three days per week, for a total of eight hours. Mother may not feed R. any food that is not provided by Father. Mother was denied reunification services. She was ordered to pay monthly child support, and arrearages of $10,803. The court denied Mother's requests for sanctions and attorney fees. Mother timely appealed from the judgment.

5

Appeal is taken from a judgment regarding child custody and visitation. Trial courts are vested with "the widest discretion" to choose a parenting plan that is in the child's best interest, taking into account the child's health, safety, welfare, and any history of parental abuse. (Fam. Code, §§ 3011, 3040, subd. (c); *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956-957.) A ruling on custody and visitation is subject to an abuse of discretion standard of review. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1087-1088; *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)

While a child is a dependent of the juvenile court, all custody issues are resolved by the juvenile court. (Welf. & Inst. Code, § 304.) The juvenile court provides a forum to "'restrict parental behavior regarding children, . . . and . . . to remove children from the custody of their parents or guardians'" if a child has "been seriously abused, abandoned, or neglected. The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.) The presumption of parental fitness underlying custody decisions in the family court does not apply in dependency cases. (*Id.* at p. 206.)

When the juvenile court terminates its jurisdiction, it issues an exit order that becomes part of an existing family law case, or is used as the basis for opening a family law file. (Welf. & Inst. Code, § 362.4.) The exit order "shall be a final judgment and shall remain in effect after [ ] jurisdiction is terminated. The order shall not be modified in a proceeding or action described in Section 3021 of the Family Code unless the court finds that there has been *a significant change of circumstances since the juvenile court issued the order* and modification of the order is in the best interests of the child." (Welf. & Inst. Code, § 302, subd. (d), italics added; *In re Marriage of David & Martha M.* (2006) 140 Cal.App.4th 96, 101-102.)

"Once the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need

6

for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining' that custody arrangement." (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at p. 956.) Any change in custody is appropriate only if a significant change in circumstances indicates that a different custody arrangement is in the child's best interest. (*Ibid*.)

In this case, the juvenile court's exit order reveals clear, continuing concerns about Mother's effect on R.'s well-being, requiring her visits to be brief and supervised. (See *In re Chantal S.*, *supra*, 13 Cal.4th at p. 204 [juvenile court exit order requiring a father to undergo counseling revealed continuing concern for the child's well-being].) "The court here vested sole legal and physical custody in [Father]. [Mother] was only allowed reasonable visitation supervised by a neutral third party." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 713.)

While R. need not remain a dependent child, as he is thriving with his nonoffending Father, the juvenile court "at the same time conclude[d] that conditions on [Mother's] visitation are necessary to minimize, if not eliminate, the danger that visits might subject the minor to the same risk of physical abuse or emotional harm that previously led to the dependency adjudication." (*In re Chantal S.*, *supra*, 13 Cal.4th at p. 204.) Specifically, the concern is that Mother may starve R. The juvenile court's exit order denying Mother custody and requiring a monitor is premised on a finding that Mother continues to pose an active threat to R.

Mother cites no evidence presented to the family court of a "significant change of circumstances since the juvenile court issued its order." (Welf. & Inst. Code, § 302, subd. (d).)[3] Mother does not admit that she failed R. by feeding him low calorie, no-

---

[3]      We do not know what evidence Mother presented during her contested hearing because she failed to supply this Court with a reporter's transcript. Without it, we also cannot tell if Mother's pregnancy expenses were discussed at the hearing.

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant

protein nourishment such as carrots, celery, cucumbers and water, leading to anemia and severe weight loss. The child's development suffered while he was in Mother's custody, and he began to thrive when placed with Father. Mother's claims of genetic, organic, and allergic diseases proved to be unfounded. Instead of educating herself to increase her knowledge of pediatric diets, Mother continues to blame R.'s physicians and nutritionists, DCFS, and even the juvenile court. Mother's responsibility for R.'s malnourishment was adjudicated in the juvenile court and affirmed on appeal. It is res judicata—a settled matter—and cannot be revisited by the family court.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

CHAVEZ, J.

FERNS, J.*

---

to article VI, section 6 of the California Constitution.