Filed 1/10/24  Olinyk v. Sheppard CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DEBORAH OLINYK, | H050742 |
| Plaintiff and Appellant, | (Santa Cruz County<br>Super. Ct. No. 22CV00568) |
| v. | |
| SHARADA SHEPPARD, | |
| Defendant and Respondent. | |

Since 2017, the property at 286 Jaunell Road in Aptos, California (the Aptos Property) has been the subject of multiple lawsuits.  In this case, Deborah Olinyk sues Sharada Sheppard, who purchased the property in 2019 from the estate of Olinyk's brother-in-law Carl Lindow.  Olinyk claims to be the equitable owner under a land contract that Carl Lindow allegedly executed with Olinyk and her husband Robert Lindow in 2011 (the Land Contract).

Sheppard failed to answer the complaint, and Olinyk moved for a default judgment.  However, the trial court denied the motion and dismissed Olinyk's claims based on rulings in prior cases that the Land Contract is invalid.

On appeal, Olinyk argues that it was improper for the trial court to consider prior cases *sua sponte*.  We disagree.  In evaluating requests for a default judgment, trial courts have a duty to act as gatekeepers and determine if the plaintiff has stated valid claims.  Moreover, as cases cited by Olinyk recognize, in performing this duty courts can—and

should—consider whether prior litigation precludes the plaintiff's claims. The trial court, however, did not give Olinyk a fair opportunity to brief the question of preclusion. Accordingly, we vacate the order denying default judgment and dismissing Olinyk's claims so that Olinyk may have an opportunity to brief the preclusion questions raised by her claims.

## I. BACKGROUND

### A. *The Land Contract*

Olinyk alleges that in December 2011 she and her husband Robert Lindow entered into a "Land Contract Agreement" to purchase the Aptos Property from Robert's brother Carl. The Land Contract purports to be between "Carl E. Lindow" and "Robert Lindow and Deborah Olinyk, husband and wife." It states that the purchase price is "$626,204.59, the approximate balance owed on the mortgage" for the property, "plus one dollar and other valuable consideration." However, the Land Contract does not require Olinyk and her husband to pay this amount by any specified time. Instead, it provides that Olinyk and her husband need pay only "one dollar per month" until they are able to obtain refinancing "on terms that are agreeable to them, at their sole discretion." Although Olinyk alleges that she performed all her obligations under the Land Contract, she does not allege that she has obtained refinancing or even attempted to do so.

### B. *Prior Litigation*

The Aptos Property first became the subject of litigation in March 2017 after a conservator was appointed over Carl's estate.[1] The conservator subsequently brought an

___

[1] On December 1, 2023, we notified Olinyk of our intent to take judicial notice of three prior cases in this court: case number H045566 (*Conservatorship of Carl E. Lindow*), case number H048336 (*Robert Lindow v. Carl E. Lindow*), and case number H046039 (*Robert Lindow v. Superior Court for the County of Santa Cruz*). Olinyk objected, but she failed to offer any valid reason why this court may not take judicial notice of its records. (See Evid. Code, § 452 ["Judicial notice may be taken of . . . [¶] . . . [¶] (d) Records of (1) any court of this State"]; see also *id.*, § 459, subd. (a) ["The (continued)

unlawful detainer action against Olinyk and her husband, who were occupying the property, and on July 31, 2017, after a trial, the Santa Clara County Superior Court entered a judgment ordering Olinyk and her husband to vacate the Aptos Property. Olinyk's husband Robert moved for reconsideration, but the Superior Court denied the motion, finding that he had not shown that his brother Carl executed the Land Contract.

Ownership of the Aptos Property also was considered in the conservatorship proceedings. In August 2017, the conservator filed a petition, which was served on Olinyk, for an order under section 850 of the Probate Code confirming the Aptos Property as a conservatorship asset. Three months later, the probate court granted the petition and ruled that "the Land Contract is invalid." Robert Lindow moved for reconsideration of this ruling as well, but in January 2018 the probate court denied the motion. In February 2018, the court also rejected affirmative defenses asserted by Robert Lindow and confirmed that the Aptos Property was an asset of Carl's conservatorship estate. In so doing, the probate court noted that it had previously ruled that "the purported land contract is invalid for failure of adequate consideration." On appeal, this court affirmed the probate court. (*Conservatorship of Carl E. Lindow* (Mar. 4, 2022, H045566) [nonpub. opn.].)

Robert Lindow also initiated several suits concerning the Aptos Property. On August 16, 2017, two weeks after the judgment in the unlawful detainer action, Robert sued his brother Carl in Santa Cruz County seeking, among other things, specific performance of the Land Contract and a declaration that the Land Contract is valid and enforceable. The Santa Cruz County Superior Court stayed the action in light of the appeal in the conservatorship proceeding, and later entered an order dismissing the case,

reviewing court may take judicial notice of any matter specified in Section 452."].) On January 10, 2024, this court, on its own motion, took judicial notice of several documents in the records of case numbers H045566, H048336, and H046039. Those documents were enumerated and attached to the order granting judicial notice.

which this court affirmed. (*Lindow v. Lindow* (Apr. 27, 2021, H048366) [nonpub. opn.].) Finally, Robert challenged the appointment of conservators over his brother Carl and Carl's estate in federal court and in San Mateo Superior Court, but these actions appear to have failed as well.

### C. *The Current Proceedings*

Olinyk filed this case in March 2022, more than four years after the rulings in the unlawful detainer and the conservatorship proceedings rejecting her claimed interest in the Aptos Property. Olinyk sued Sharada Sheppard, who had purchased the Aptos Property from Carl Lindow's conservatorship estate in February 2019. Olinyk alleges that Sheppard had actual and constructive knowledge that "civil actions concerning the title" to the Aptos Property were pending and therefore was not a good faith purchaser for value. Olinyk further alleges that Sheppard took title to the property subject to Olinyk's interest in the property under the Land Contract.

Olinyk asserted four claims: (1) a claim for specific performance of the Land Contract; (2) a claim for breach of the contract; (3) a "declaratory or quiet title action," seeking, among other things, a declaration that the Land Contract is valid and Olinyk is entitled to possession of the Aptos Property (boldface & capitalization omitted); and (4) a financial elder abuse claim.

Sheppard did not file an answer, and Olinyk requested entry of default in June 2022. Although this request was initially rejected, a default was eventually entered in September 2022. The following month Olinyk applied for a default judgment, and on January 5, 2023 a prove-up hearing was held.

Before the hearing, the trial court issued a tentative ruling denying Olinyk's motion and dismissing her claims in light of prior cases "ruling that [Olinyk and her husband] had no valid claim to the property." The tentative ruling listed the cases described above but did not explain how the court became aware of those cases or identify the specific documents in those cases on which the court relied.

4

After the prove-up hearing, the trial court issued a minute order adopting the tentative ruling and dismissing the case with prejudice.  The minute order stated that "[t]he land contract signed by Deborah Olinyk, Robert Lindow, and Carl Lindow provides no valid claim to [the] subject property."  In addition, it prohibited Robert Lindow and anyone affiliated with him from filing further actions concerning the Aptos Property.

On April 25, 2023, the trial court issued a signed order of dismissal.  After adopting the tentative ruling, the order dismissed the case with prejudice.  It reiterated that "[t]he land contract signed by Deborah Olinyk, Robert Lindow, and Carl Lindow provides no valid claim to [the] subject property."  The order also stated that, "[i]f Robert Lindow or anyone affiliated with [him], files any further actions in this Court to attempt to obtain title or possession of the subject property (286 Jaunell Road, Aptos, CA), the Court will sanction them pursuant to CCP section 1287(c)(2)."

Olinyk filed a notice of appeal on January 12, 2023.  Although the notice was filed before the signed order of dismissal, we will deem it filed upon entry of that order. (*Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906.)

## II.  DISCUSSION

We review de novo the denial of a default judgment.  (See, e.g., *J.W. v. Watchtower Bible and Tract Society of New York, Inc*. (2018) 29 Cal.App.5th 1142, 1162.)  We conclude that the trial court properly considered whether Olinyk's claims are precluded by prior litigation, but that Olinyk was not afforded a fair opportunity to brief the preclusion questions raised by that litigation.

Olinyk contends that the trial court stepped outside of the proper role of courts as "passive and neutral decisionmakers" and improperly acted as an advocate for defendant Sheppard in considering *sua sponte* whether prior litigation precludes Olinyk's claims. In fact, it was perfectly appropriate for the trial court to consider whether Olinyk's claims are precluded by prior litigation.  As courts have long recognized, in considering whether

5

to enter a default judgment, "it is the duty of the court to act as gatekeeper, ensuring that only appropriate claims get through." (*Hediary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868; see also *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1000 (*Grappo*) [trial courts "must vigilantly attend to their duty in connection with the default process ' "to act as gatekeeper, ensuring that only the appropriate claims get through" ' "]; *Kim v. Westmoreland Partners, Inc.* (2011) 201 Cal.App.4th 267, 272-273 (*Kim*) ["The Court's role in the process of entering a default judgment is a serious, substantive, and often complicated one, and it must be treated as such."].)

In performing this gatekeeping duty, trial courts must determine whether plaintiffs seeking default judgments have stated valid causes of action and, if they have not, deny judgment. (See, e.g., *Grappo*, *supra*, 11 Cal.App.4th at p. 1014; *Kim*, *supra*, 201 Cal.App.4th at p. 282; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829 (*Falahati*).) A defendant's failure to answer a complaint " ' "has the same effect as an express admission of the matters well pleaded in the complaint," ' " which means that well-pleaded allegations "are treated as true for purposes of obtaining a default judgment. [Citation.]" (*Kim*, *supra*, 201 Cal.App.4th at p. 281, italics omitted.) "But that is all that the default does. There is no penalty for defaulting." (*Ibid.*) Consequently, "if the well-pleaded allegations of the complaint do not state any proper cause of action," default judgment should not be granted. (*Id.* at p. 282; see also *Falahati*, *supra*, 127 Cal.App.4th at p. 827 ["a default judgment cannot properly be based on a complaint which fails to state cause of action against the party defaulted"].)

In determining whether the claims in a complaint are valid, courts may look beyond the four corners of the complaint in some circumstances. For example, where the plaintiff attaches an agreement to the complaint, the terms of that agreement may be considered in determining whether the complaint states a valid claim for breach of the agreement. (See, e.g., *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 994.) And, by extension, default judgment on a contract claim should be denied where the terms of a

contract attached to the complaint show that the statute of limitations has run. (*Kim*, *supra*, 201 Cal.App.4th at p. 282.)

Additionally, in determining whether the well-pleaded allegations in a complaint state a valid cause of action, courts may "consider matters which may be judicially noticed," including matters brought to a court's attention by its "independent research." (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591; see also *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [" ' "[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' "].) Accordingly, default judgment should be denied based on the preclusive effect of prior litigation about which a court has taken judicial notice. (See *Taliaferro v. Davis* (1963) 216 Cal.App.2d 398, 409-410 (*Taliaferro*).)

For example, in *Taliaferro v. Davis*, a man filed a cross-complaint against his former wife alleging that a 20-year-old property settlement agreement between them was void as against public policy. (*Taliaferro*, *supra*, 216 Cal.App.2d at pp. 403-404, 405.) Although the former wife did not answer the cross-complaint, the trial court took judicial notice *sua sponte* "of the prior litigation and the appellate decisions concerning the 1943 property settlement agreement" and ruled that those decisions precluded the former husband's challenge to the settlement agreement. (*Id*. at pp. 407; see *id*. at p. 408.) The Court of Appeal affirmed this ruling "on the basis of res judicata." (*Id*. at p. 410.) In so doing, the court held that "[*t*]*he lower court was entitled to take judicial notice of all the related prior proceedings in its court involving the litigation between appellate and respondent* as well as the decisions of the appellate courts of this state relative to such proceedings." (*Id*. at p. 409, italics added.)

Although Olinyk cites the *Taliaferro* decision, she ignores its ruling that the trial court was entitled to take judicial notice of prior litigation *sua sponte* and deny a default judgment based on preclusion. Instead, invoking the "principle of party presentation" and the general requirement that affirmative defenses such as issue or claim preclusion

7

must be pled, she argues that the trial court should not have raised the question of preclusion *sua sponte* and instead should have treated any preclusion defense as waived. But Olinyk fails to cite a single case holding that a trial court may not *sua sponte* take notice of prior litigation and deny a default judgment based on preclusion.

Indeed, Olinyk cites several cases recognizing just the opposite. In addition to *Taliaferro*, Olinyk cites two cases recognizing that, even after a default, plaintiffs should be precluded from asserting claims or facts decided against them in prior litigation. Olinyk quotes extensively from a decision of the United States Court of Appeals for the Fourth Circuit, *Eriline Co. S.A. v. Johnson* (4th Cir.) 440 F.3d 648, which held that a federal district court "erred in raising the statute of limitations defense *sua sponte*" in denying a default judgment. (*Id*. at pp. 650, 653.) However, far from supporting Olinyk's assertion that courts may not consider prior litigation *sua sponte* in considering a request for a default judgment, the Fourth Circuit expressly recognized that certain affirmative defenses may be raised and considered *sua sponte* because they "implicate important institutional interests of the court." (*Id*. at p. 655.) And the example it gave of such an affirmative defense was "res judicata": "For example, the affirmative defense of res judicata—which serves not only the 'defendant's interest in avoiding the burden of twice defending a suit,' but also the important judicial interest in avoiding resolution of any issue that the court has already decided—may, in 'special circumstances,' be raised *sua sponte*." (*Ibid*.)

In addition, in making this statement, the Fourth Circuit quoted another decision cited by Olinyk: the United States Supreme Court's decision in *Arizona v. California* (2000) 530 U.S. 392. In that decision, the Supreme Court stated that, " 'if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised.' " (*Id*. at p. 412.) Thus, far from establishing that the trial court overstepped its bounds in denying default judgment

8

based on preclusion, the decisions cited by Olinyk directly addressing the topic all recognize that it is appropriate to do so.

Olinyk also objects that she was surprised by the trial court's *sua sponte* consideration of prior litigation and was thereby subjected to "[t]rial by [a]mbush." (Boldface omitted.) This claim of surprise is suspect: Contrary to her representation that she was not a party to any of the cases cited by the trial court, Olinyk was a defendant in the 2017 unlawful detainer action, and in that action the trial court found that her husband had failed to show that the Land Contract was signed by his brother Carl and ordered her to vacate the Aptos Property—something that she most probably remembers. In addition, Olinyk was served in the conservatorship proceedings in which the probate court found that the Aptos Property was part of the conservatorship estate and that the Land Contract was "invalid for lack of consideration." As a consequence, Olinyk was likely aware of at least some of the prior cases referenced by the trial court.

Nonetheless, the trial court should have identified the specific documents that it was considering, explained how it became aware of those documents, and given Olinyk a reasonable opportunity to brief the preclusion questions raised by the documents. (See, e.g., *Bricker v. Superior Court* (2005) 133 Cal.App.4th 634, 638-639.) There are at least three such questions. First, although Olinyk's husband Robert, rather than Olinyk herself, was a party to many of the cases noted by the trial court, the Land Contract was between Carl Lindow and "Robert Lindow and Deborah Olinyk, husband and wife," and therefore Olinyk may be in privity with her husband with respect to Aptos Property. (See, e.g., *Cutting v. Bryan* (1929) 206 Cal. 254, 258 [As to her community interest in specific property, "the plaintiff herein was in privity with her husband, and was represented in said action by him as fully as though she had been expressly made a party thereto."].) Second, although unlawful detainer actions usually have limited preclusive effect, the unlawful detainer action here, to which Olinyk was a party, included a trial and post-trial briefing, which may have provided enough of an opportunity to litigate to give

9

the action preclusive effect. (See, e.g., *Vella v. Hudgins* (1977) 20 Cal.3d 251, 256-257 [" '[F]ull and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer . . . will result in a judgment conclusive upon issues material to that defense."].) Third, because Olinyk was served with the petition for an order confirming the Aptos Property as a conservatorship asset, she may be bound by the probate court's ruling that the property was a conservatorship asset. (Code Civ. Proc., § 1908, subd. (a)(1) ["In the case of a judgment or order against a specific thing . . . the judgment or order is conclusive upon the title to the thing"].) Olinyk should have had a fair opportunity to address these issues in the trial court.

Observing that "[t]here has never been any action against Sheppard for elder abuse," Olinyk also objects that the trial court did not address her elder abuse claim. But Olinyk's problem is not claim preclusion. Her problem is issue preclusion—in particular, the findings that the Land Contract is invalid and unenforceable—and issue preclusion may apply whether or not the claim at issue was raised in the previous litigation. (See, e.g., *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 ["Issue preclusion prohibits relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action" (italics omitted)].) In addition, as Olinyk acknowledges, her elder abuse claim alleges a "conspiracy for the purpose of taking [her] property." Consequently, like the rest of her claims, Olinyk's elder abuse claim is based on the allegation that she owns the Aptos Property under the Land Contract, and therefore the claim raises the same preclusion issues as her other claims.

## III. DISPOSITION

The order of dismissal is vacated, and the trial court is instructed to provide Olinyk an opportunity to brief whether prior litigation precludes her claims. The parties shall bear their own costs on appeal.

10

_____

BROMBERG, J.

WE CONCUR:

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

_____

DANNER, J.

*Olinyk v. Sheppard*
H050742