[Civ. No. 9326. Third Dist. Sept. 3, 1958.]

CROFOOT LUMBER, INC. (a Corporation), Respondent, v. HENRY THOMPSON et al., Defendants and Appellants; JACK LEWIS et al., Interveners and Appellants.

Francis M. Passalacqua, McKenzie, Arata & Murphy, Kasch & Cook and Brobeck, Phleger & Harrison for Appellants.

Spurr & Brunner and Sullivan, Roche, Johnson & Farraher for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment declaring the rescission in fact of a contract whereby the predecessor in interest of plaintiff-respondent agreed to sell to Henry Thompson and Jack Edsell the merchantable timber upon land in Mendocino County.

The contract made August 15, 1949, read as follows:

"This agreement entered into between H. C. Crofoot (Seller) and Henry Thompson and Jack Edsell (Purchasers) this 15th day of August 1949, whereby Purchasers agree to pay $500 at above date, $5.00 a thousand stumpage (Spalding Scale) for all merchantable timber and $2.00 per thousand (Spalding Scale) for all timber not classified as merchantable timber. The Tan Oak is to be purchased at the prevailing price at time of cutting. Said timber is located in the County of Mendocino, State of California, and said timber is described as follows:

"Lots 11, 12, 24 of Section 19, W½ of SW¼, NE½ of SW¼, Section 20, Township 16 North, Range 14 West, Mount Diablo Base and Meridian.

"Seller agrees to furnish all rights of way to remove said timber. Above stumpage price for said timber to be paid for on the 1st and 15th of each month on all timber removed from premises."

Thompson and Edsell immediately entered the land and began what is referred to as a "split stuff" operation, which consists of felling trees sufficiently clear and choice that the logs may be split into such products as pickets, stakes and shakes. The two men worked together about four weeks and made approximately 5,000 grape stakes. Edsell then became ill and left. He never returned. He testified that when he left he turned everything over to Thompson, saying to him, "Henry, you take over. It's your's." Thompson assented to the arrangement and Edsell left. He does not appear in the picture again until six years later when he was located by appellant Lewis who obtained from him for $250 a quitclaim deed to his interest in the timber. From the testimony of Thompson and Edsell as to Edsell's abandonment of the enterprise and his statement that he was turning his interest over to Thompson and the subsequent conduct of both, indicating mutual understanding that Edsell was no longer interested, and from the minimal consideration paid by Lewis for Edsell's

quitclaim deed, the trial court found as a fact that Edsell, when he left, had assigned his interest in the contract to Thompson and that Lewis took no interest in the timber by virtue of the quitclaim. We hold the evidence was amply sufficient to support this finding of assignment.

Thompson continued on the land and continued his split-stuff operation, working alone except for a short period when another man worked with him. Although he sold the products of his labor he was quite remiss in accounting therefor. On April 3, 1950, he paid respondent's predecessor $127.11, stating that from August 15, 1949, to April 3, 1950, he had removed a total of only 25,725 board feet of timber. On December 20, 1951, he paid $335.94, stating that since his last payment he had removed 67,188 board feet. On October 29, 1952, he paid $214.58 to cover a claimed cutting of 42,915 board feet. Shortly thereafter one Banks, a woods boss for Crofoot, was sent to examine the timber. He determined the amount of timber Thompson had cut far exceeded the amounts he had reported. At this time, therefore, Thompson stood in default, both in his duty to pay regularly on the 1st and 15th of each month and in his duty to account and pay for all timber taken. Banks believed him to have been guilty of concealment and false reports and endeavored to ascertain the exact conditions with respect to Thompson's operations. He demanded of Thompson that he bring in his books in order that a proper accounting might be made. Thompson agreed to do this but broke this promise also. Finally, in 1953, he told Banks that he was not obligated to make accountings and suggested that Banks see his lawyer. He continued his spasmodic removal of timber and about mid-1954 Crofoot (who had become the successor in interest to its predecessor) cruised the timber. The cruise indicated that, although reporting a total of only 135,828 board feet of timber, Thompson had actually taken approximately 350,000 board feet.

The trial court construed the written agreement, in connection with evidence introduced as to the circumstances attending its execution, as requiring that Thompson should begin logging the timber land within a reasonable time which the court fixed as one year; and as further requiring that logging, once begun, should be completed within a reasonable time which the court fixed as three years. From the record we hold that the trial court correctly construed the contract. Thompson was in default as to both contractual obligations, and there

was substantial evidence that Thompson's operation had resulted and would result in waste if continued since merchantable parts of logs which would not split were being left to rot in the woods. On the 17th of August, 1954, Banks for Crofoot, visited the timber land and told Thompson that for his defaults respondent had rescinded the contract and that Thompson had no further interest in the timber. On October 1, 1954, Thompson sent in to Crofoot a statement that between October 29, 1952, and October 1, 1954, he had cut 83,925 board feet, and he accompanied his statement with a payment of $477.83. Crofoot retained the payment, crediting the sum as a past due payment for timber taken prior to rescission.

On October 28, 1954, the present action was instituted. Crofoot joined Thompson, Edsell and several fictitiously named defendants. The first count in the complaint related the making of the timber sale agreement, the succession of Crofoot to the ownership of the real property and the allegation that Thompson and Edsell had breached the agreement by failing to pay for timber taken, by failing to pay in accordance with the rate of payment agreed upon and by failing to log the land. It was further alleged that by reason of the breaches of contract, Crofoot had elected to declare the contract and the interest of said defendants terminated. An accounting for timber taken was requested, and by a separate cause of action Crofoot sought a decree quieting its title against all defendants. Thompson answered, denying that the contract had ever been terminated as to him. He prayed that Crofoot take nothing. Edsell answered, alleging that on October 7, 1955, he had transferred his interest in the contract to Lewis and asserting that Crofoot and its predecessor in interest had waived the contract provisions for periodic payments by repeatedly receiving irregular payments. Lewis, by leave of court, intervened, setting up the transfer of Edsell's interest to himself, asserting the contract still to be in full force and asking that he be adjudged to be the owner of the interest quitclaimed to him. Later Thompson and Lewis amended their answers to allege a waiver by Crofoot and its predecessor of regular payments by receipt of irregular payments.

Upon these pleadings the cause went to trial and just prior to the close of evidence the court permitted Crofoot to amend its complaint to conform to proof. By the amendments there was pleaded breach of the contract obligation to pay regularly, to pay fully for timber taken, to fully account, and to seasonably begin and complete logging. Crofoot further asserted

that by reason of the breaches thereof, the contract had, on August 17, 1954, been terminated and rescinded and that the preexisting rights of the defendants had ended. The trial court gave judgment that since the 17th day of August, 1954, Crofoot had been the owner in fee simple and entitled to the possession of the land and the timber standing thereon; that the claims of Thompson, Edsell and Lewis and of all others claiming under them were without right and enjoining those persons from asserting such claims. The court gave Crofoot a money judgment against Thompson in the sum of $1,911.63 for timber taken and unpaid for by him. Thereafter a motion for new trial was denied and this appeal followed.

Since the contentions on appeal revolve around the issue of unilateral termination for breach, we will summarize the findings on that issue. The court found that under the terms of the contract Thompson and Edsell agreed to remove the timber through a logging operation and split-stuff operation within a reasonable time; that they agreed to commence said operation immediately and to pay for timber so removed on the 1st and 15th of each month at the specified stumpage rates; that the purchasers went into possession for the purpose of logging and removing timber under the contract; that Crofoot had fully performed the contract; that upon entering the property the purchasers commenced the hand manufacture of split stuff; that approximately four weeks after the making of the contract Edsell assigned all his interest to Thompson, after which date his interests were owned by Thompson; that on October 7, 1955, Edsell for $250 attempted to transfer to Lewis by quitclaim deed such interest as he might have under the contract, but that on said date he had no interest; that on February 21, 1956, Lewis purported to deed a half interest in the alleged rights obtained from Edsell to one Rawles; that because the quitclaim deed of Edsell to Lewis conveyed no interest, the purported transfer from Lewis to Rawles created no interest in Rawles; that at no time before the commencement of the action by Crofoot against Thompson, Edsell and fictitiously named defendants did Thompson transfer to Lewis or Rawles or Edsell any interest in or under the contract; that neither Lewis nor Rawles ever acquired any interest under the contract; that among the material obligations to be performed by Thompson were the obligations to pay for all timber removed, to pay therefor on the 1st and 15th of each month, to commence the removal of all timber within a

reasonable time, and to complete the same within a reasonable time; that Thompson failed to perform every one of the above obligations and breached the contract in respect of each; that each breach constituted a material breach of the agreement; that Thompson manufactured split products continuously from August 15, 1949, removing timber from the subject land and utilizing it; that he failed and refused to make payments on the 1st and 15th of each month although demands had been made therefor; that he made payments on April 3, 1950, December 20, 1951, and October 29, 1952, and between the period August 15, 1949, to August 17, 1954, had sold 412,089 board feet of split products and had removed that amount of timber from the subject property, paying for only 135,530 board feet; that a reasonable time to have commenced logging operations was one year from August 17, 1949; that such operations had not begun by August 17, 1954; that a reasonable time within which the purchasers were obligated to have completed logging operations was the period of three years and that prior to August 17, 1954, Thompson had failed and refused to commence seasonably or complete the same; that on August 17, 1954, Crofoot, as successor in interest to the sellers under the contract, rescinded the contract by notice to Thompson, and that since said date the contract stood as rescinded and terminated, all rights thereunder having ceased by virtue of Crofoot's election to rescind for the breaches found; that the breaches of the contract were each and all material and each and all constituted a material failure of consideration; that on October 1, 1954, after rescission, Thompson paid Crofoot $477.83; that said sum did not cure the default of Thompson, and Crofoot retained the sum by giving credit therefor to Thompson; that Thompson still owes for timber removed up to the date of rescission the net sum of $404.97; and that after rescission and during the pendency of this action Thompson continued to remove timber for split products manufactured by him up to February, 1956.

The court further found that during the year 1956 Thompson, Lewis and others had removed substantial quantities of timber from Crofoot's property, but that the removal thereof was the subject matter of another action pending before the court, and that damages accruing for such removal would be determined in that action and not considered in this.

The foregoing reference in the findings to ''others'' who were found to have acted with Thompson and Lewis in re-

moving substantial quantities of timber during the year 1956 apparently is to William Moores, William Smith, individually and in copartnership as Moores and Smith, Hollow Tree Lumber Company, a corporation, and Don Ford, who, purporting to act under the rights of Thompson and Lewis, went upon the property in February of 1956 during the pendency of the action and removed about four and one-half million board feet of timber in a few months. These people filed no pleading in this action, but after judgment was rendered purported to move for a new trial along with Thompson, Edsell and Lewis. After denial of their motion they purported to take an appeal, making the same demand for transcript as Thompson, Edsell and Lewis. They have also filed briefs on appeal herein, asking that the judgment be set aside. So far as the record before us is concerned, it shows no right in these parties to appeal. Crofoot, however, has raised no objection to their participation herein, and since all the points raised by them are also raised by the appellants of record, we shall not further comment on their status.

The action brought by Crofoot was essentially one based upon its election to consider itself discharged from further duty of performance on its part because of Thompson's breaches which Crofoot considered to be breaches of such vital importance as to justify its action in declaring the contract at an end. Having done this, Crofoot sought the alternative remedy for breach, resting in a court decree restoring to it its possession and ownership of the timber on its land. At the time the action was brought, Thompson still maintained possession and continued to cut and remove timber. ▮ The general subject of restitution as a remedy for breach of contract is treated in Corbin on Contracts, sections 1102-1121, inclusive. There it is stated in section 1102 at page 455:

". . . The purpose of this remedy is the restoration of the injured party to as good a position as was occupied by him before the contract was made, without attempting to compensate him for consequential harms; the means to this end is a judgment for the equivalent in money of any performance rendered by the plaintiff and received by the defendant (or in some cases for the return of specific property) . . ."

▮ And in section 1104, pages 461-462:
". . . [W]e are dealing with restitution as a remedy for breach of contract; a judgment for such restitution is as truly a remedy for a 'breach' as is a judgment for damages. It is true that the courts have often said, and a plaintiff has often

alleged, that the contract has been 'rescinded' by the injured party because of the defendant's vital breach. Such a 'rescission' as this is essentially different from one that is based on mutual agreement, both in its operative facts and in its legal effects. Such a 'rescission' is merely an assertion by the injured party that the other has committed a vital breach, that he himself has been discharged from the duty of further performance, and that he asks for a restitutionary remedy. If he desires, he can make identically the same assertions and ask for 'damages' instead of restitution. Also, he may properly ask for damages or restitution in the alternative, leaving his final choice to be made at the actual trial of the case.''

Civil Code, section 1688, reads: ''A contract is extinguished by its rescission.'' Section 1689 of that code provides in part as follows:

''A party to a contract may rescind the same in the following cases only:

''. . . . . . . . . . . .

''2. If, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part;

''. . . . . . . . . . . .''

By the contract there was transferred to Thompson and Edsell a valuable right to enter upon the land and to remove therefrom all the merchantable timber thereon, which removal when effected would substantially reduce the value of the land. Whether this contract conveyed title to the timber as contended for by appellants or constituted a right to cut and remove and thus obtain title to the timber as taken is not material to the decision of this case. In either event Thompson and Edsell received a valuable property right. In connection with it they assumed material obligations heretofore related. They took possession of the land and retained it up to and after the commencement of the action. The right of the injured party to claim release from obligations to elect to terminate the contract depends upon the gravity of the breach. Says Corbin, section 1104, page 464:

''. . . In the case of a breach by non-performance, however, assuming that there has been no repudiation, the injured party's alternative remedy by way of restitution depends upon the extent of the non-performance by the defendant. The defendant's breach may be nothing but a failure to perform some minor part of his contractual duty. Such a minor non-performance is a breach of contract and an action for damages

can be maintained. The injured party, however, can not maintain an action for restitution of what he has given the defendant unless the defendant's non-performance is so material that it is held to go to the 'essence'; it must be such a breach as would discharge the injured party from any further contractual duty on his own part . . .''

 In this case the trial court found that Thompson's various breaches of his obligation were material and did constitute a failure of consideration. We think the record supports this. Thompson and Edsell when they entered the land (and after Edsell's assignment, Thompson alone) stood charged with reasonable dispatch in the harvesting of timber on the land and the payment therefor as harvested. From the beginning the purchasers breached not only the obligations to harvest and pay for the timber, but also the implied obligations of honorable, fair conduct toward their seller. The entire course of conduct immediately adopted and continuously sustained was violative of every obligation they had assumed. The trial court, as appears in its memorandum opinion, was much impressed with the complete infidelity of Thompson in respect of his obligations, and we think no one can read the record and not be likewise impressed. Said the trial court:

''. . . Mr. Thompson has not lived up to a single term of the contract, brief as it is. He did not pay for all timber removed by him from the premises; he did not make payments on the 1st and 15th of each month for timber removed; and he did not remove timber within a reasonable time, and did not complete the contract in a reasonable time. Each one of these breaches went to the very roots of the contract and constituted a material violation thereof and each constituted a ground for rescission.''

It is true that plaintiff and its predecessor appear to have been overly indulgent of Thompson's shortcomings, to say the least, and Thompson and those interested under him vigorously insist that therefrom in some manner arise rights of Thompson to continue in his wrongful conduct until and unless the owner of the land and the timber restored a right to have the contract performed. They appear to argue that by reason of long indulgence there arose a hiatus in Thompson's contractual obligations, a sort of license for continued wrongdoing. We cannot read the record in that light. Thompson's disregard of his contractual duties was consistent, persistent and wilful, as is shown by his response to demands

that he reveal and account for quantities of timber he was taking. Civil Code, section 1691, contains the following language:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly, upon discovering the facts which entitled him to rescind, . . .

". . . . . . . . . . . ."

And upon this subject Corbin says:

"Even though the breach by one party is a repudiation of the contract or is otherwise so substantial as to discharge the other party from further duty, it is not necessary for him to seek a judicial remedy at once or to elect immediately among the remedies that may be available. If, however, his own conduct is such as to be operative as a waiver of condition, so that his own duty to continue performance is restored, his rights to the remedy of restitution is suspended although he may still have a right of action for damages. Whether his conduct actually operates as a waiver may be a difficult problem. It is often reasonable for him to hope for a retraction of the repudiation or to expect that a defective performance will be cured by the other party. If his hope and expectation are not realized he may still treat the breach as a vital one and have the same choice of remedies as he had originally." (Section 1104, pp. 466-467.)

█ Generally, the question of diligence depends upon the facts of a particular case. (*Spadoni* v. *Maggenti*, 121 Cal.App. 147 [8 P.2d 874].) The lapse of time is not the sole consideration in determining diligence. (*Beardsley* v. *Clem*, 137 Cal. 328 [70 P. 175].) █ We think the trial court is supported by the record in its implied finding that under the facts of this case Crofoot, when it acted to terminate the contract and entitle itself to the remedy of specific restitution, had the right to do so. There is in this record no showing whatever that Thompson changed his position in reliance upon indulgence; that he evinced any intention of performing his contract; that he changed in any degree his habit of violation or that he was not aware at all times of the wrongful nature of his conduct. For instance, when finally Banks became insistent that he account for timber taken, Thompson, having already promised and failed to do so on a number of occasions, referred Banks to Thompson's lawyer, a remark which the trial court aptly characterized as one frequently made by

those who know they are in trouble. In this case it was within the power of the trial court to find as a matter of fact that Crofoot was not disqualified to terminate the contract through lack of diligence.

Appellants contend that the judgment appealed from worked a forfeiture of Thompson's interest in the timber on Crofoot's land. This is not so. Thompson's conduct gave to Crofoot the option to consider itself released from all obligations to him and to terminate the contract between them, by the faithful performance of which alone Thompson could maintain and capitalize his right to take Crofoot's timber. When that had been done which the court declared was rightfully done, the cessation of the rights and interest of Thompson occurred, but occurred because of his own wrongful conduct.

The judgment appealed from, therefore, does not declare a forfeiture.

There are other contentions advanced by appellants. We think that they are not only without merit, but that they do not require specific discussion.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied September 30, 1958, and appellants' petition for a hearing by the Supreme Court was denied October 28, 1958.