[Civ. No. 21994.   First Dist., Div. Three.   July 2, 1965.]

HIL-MAC CORPORATION et al., Plaintiffs and Respondents, v. MENDO WOOD PRODUCTS, INC., Defendant and Appellant.

Timothy W. O'Brien and James F. Kemp for Defendant and Appellant.

Leo M. Cook for Plaintiffs and Respondents.

SALSMAN, J.—This is an appeal by Mendo Wood Products, Inc. from a judgment in favor of respondents Hil-Mac Corporation and Harry Hildebrand and Nita Hildebrand in an action brought to rescind a contract and to recover damages in quantum meruit.[1]

Appellant is a manufacturer of 2 x 4 studs. In 1959 it owned cutting rights on two tracts of timber known as the Lenny and Drewry tracts. Respondent is engaged in logging operations, cutting timber and transporting logs by truck to various mills. Appellant and respondent entered into a written contract whereby respondent was to cut the timber on

---

[1]No issue is raised on this appeal concerning the rights of the individual respondents Harry Hildebrand and Nita Hildebrand. They were named as plaintiffs in the amended complaint only because they had individually guaranteed performance of the written agreement by Hil-Mac Corporation. The term ''respondent'' therefore refers only to Hil-Mac Corporation.

the Lenny and Drewry tracts for appellant, and transport the logs to appellant's mill. Respondent was to be paid $37 per thousand board feet for its services. One dollar per thousand feet was to be withheld by appellant, however, pending full performance of the contract. The contract provided that appellant's scaler should be the sole judge of the grade[2] and scale[3] of all logs delivered, and that appellant would accept ". . . #3 and better Sawlogs, according to the Owner's [appellant's] determination of #3 and Better Sawlogs."

Before entering into the contract, the parties sent their representatives to inspect the property. Carl Buhlman represented appellant. Richard Webb acted for respondent. Buhlman pointed out to Webb the boundaries of the tracts to be logged, and in particular located the southwest corner of an adjoining property owned by one Wooldridge. Webb noted the areas pointed out by Buhlman, and used this information as a basis for locating timber stands in the property to be logged, the routes of roads to be constructed to reach the timber, and the availability of an old logging road supposed to be within the area controlled by appellant. In fact, Buhlman was in error as to the correct boundaries of the Lenny and Drewry tracts. Certain readily accessible timber of good quality supposed to be in the Lenny and Drewry tracts was not within the area to be logged, and the old logging road was on the Wooldridge property and not available for use by respondent. Although the written contract correctly described the Lenny and Drewry tracts, respondent assumed that the description covered the area pointed out to Webb by Buhlman. After the contract was entered into and performance was begun, the error was discovered. Because of the unavailability of the old logging road on the Wooldridge property respondent was required to build other roads. Moreover, a portion of a road approximately three-quarters of a mile in length, constructed by respondent, had to be abandoned because of the error.

The first logs were delivered by respondent to appellant on April 23, 1959. Respondent complained about additional road costs caused by the misdescription of the property and the

---

[2]The term "grade" here refers to a determination of the quality of a log.

[3]"Scale" is the measurement by which the volume of a log is computed.

unavailability of the old logging road. Later, dispute arose between the parties over appellant's method of grading logs delivered, and also over delays on the part of appellant in the unloading of respondent's trucks. It was respondent's claim that because of delay in the unloading of its equipment its trucks often made only one trip to the mill each day, whereas with proper attention to the discharge of their load, the trucks could have made two trips per day. Respondent's complaints were the subject of negotiation and discussion between the parties on various occasions. On September 21, 1959, respondent served formal notice of rescission of the contract upon appellant.

As we have heretofore noted, respondent's complaint sought damages in quantum meruit. After trial, the court found that respondent was entitled to rescind the contract on the grounds of mutual mistake of fact, and because of appellant's breach of the contract in failure to grade and scale the logs delivered, and delays in discharging respondent's trucks at appellant's mill. Pursuant to its findings the court entered judgment in respondent's favor for (a) $2,500 as the reasonable cost of additional logging roads; (b) $4,181 additional logging expense incurred; (c) $1.00 per thousand board feet for logs delivered, to bring the price up to $37 per thousand board feet; (d) $8,854 for "loggs [sic] logged and delivered, but docked."[4]

We have concluded that the judgment must be affirmed in all respects, except as to item (d) of damages awarded by the trial court, namely the allowance of $8,854 for "loggs [sic] logged and delivered, but docked" by appellant.

Appellant first contends that respondent was not entitled to rescind the contract because respondent did not act promptly after discovery of the mistake in the boundaries of the Lenny and Drewry tracts and further, respondent has not offered to restore everything of value received under the contract. (Civ. Code, § 1691.) These contentions cannot be upheld.

The determination of whether a party entitled to rescind a contract has acted "promptly" within the meaning of Civil Code section 1691 depends upon the particular facts of each case. The question is one of fact, to be resolved in the first instance by the trier of fact, and to be upheld on appeal if supported by substantial evidence. (*French* v. *Freeman*,

---

[4]Dockage is a deduction from the volume of a log, for defects such as knots, rot, pitch, etc.

191 Cal. 579, 589 [217 P. 515]; *Crofoot Lumber, Inc.* v. *Thompson,* 163 Cal.App.2d 324, 334 [329 P.2d 302].)

It is clear from the pretrial order that respondent relied upon not one, but three separate grounds for rescinding the contract. The first ground was the mutual mistake of fact concerning the boundary lines of the area to be logged. The other grounds were failure on the part of appellant properly to grade and scale the logs delivered, and last, the delays on the part of appellant in unloading and discharging respondent's trucks. The trial court made findings supporting all of these grounds for rescission of the contract. These findings are supported by substantial evidence. ██ Of course it is true that the mistake in the boundaries of the two tracts to be logged was discovered by respondent in April of 1959, and formal notice of rescission was not given until September 21, 1959. In the interval between discovery of the mistake and formal rescission, however, other grounds for rescission arose, and all of these were the subject of continuing discussions between the parties. Under these facts the trial court was warranted in finding that respondent made prompt rescission of the contract. (*Williams* v. *Marshall,* 37 Cal.2d 445, 455 [235 P.2d 372]; *Crofoot Lumber, Inc.* v. *Thompson, supra,* 163 Cal.App.2d 324.)

██ Respondent's failure to restore the consideration received under the contract did not impair its right to rescind. All that respondent received was pay for logs cut and delivered, at the rate agreed upon in the contract, graded and scaled according to appellant's own measurements. There is no contention made that the reasonable value of the logs delivered was anything less than the price stipulated in the contract. ██ It has long been the rule that one entitled to rescind a contract is not bound to restore that which he would be entitled to retain in any event. (*Kales* v. *Houghton,* 190 Cal. 294, 307 [212 P. 21], and cases cited; see also Rest., Contracts, § 349.)

Although respondent had the right to rescind the contract, and to receive quantum meruit damages, there is one item in the judgment that is not supported by any evidence, namely the award of $8,854 for "loggs [*sic*] logged and delivered, but docked" by appellant.

██ Under the contract appellant was bound to accept all logs graded as "#3 and Better Sawlogs". The scaling process fixed the volume of lumber in a given log. After gross volume

was fixed, a deduction was made therefrom for defects and imperfections. This was called "dockage". Here appellant arbitrarily graded all logs accepted as #3 Sawlogs. The logs were then scaled, and finally a deduction from volume of approximately ten per cent was made as "dockage". The trial court found that this dockage amounted to 242,290 feet of logs, and using the price agreed upon in the rescinded contract as evidence of reasonable value, fixed the amount due to respondent for this item of damage at $8,854.

The written contract makes no reference to "dockage" or to any deduction from gross scale. Nevertheless, numerous witnesses testified that each log had to be scaled for defects, and some deduction made from gross volume for defects such as limbs, knots, rings, checks, etc. There was no evidence that very many (if any) logs from a given stand of timber would scale 100 per cent. There was a great deal of testimony concerning dockage in the lumber industry, but there was no general agreement as to an exact percentage to be allowed. The range of testimony ran from a minimum of 4 per cent to a maximum of 15 per cent. All agreed that some dockage was to be expected. Richard Webb, who was active in the logging operation on behalf of respondent, estimated dockage at from 6 to 7 per cent. No witness testified that there should have been no dockage at all. As we have seen, the trial court's finding and judgment made no allowance whatever for dockage, and in this respect that portion of the judgment is not supported by the evidence and must be reversed.

That portion of the judgment that awards respondent the sum of $8,854 for logs logged and delivered but docked by appellant, is reversed. Upon remand, the trial court may determine the correct amount to be deducted from the gross scale upon the basis of the present record, or take further evidence, including evidence of grades of the logs, as the court may be advised.

In all other respects the judgment is affirmed. Each party shall bear its own costs on appeal.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied July 29, 1965.