FACTUAL AND PROCEDURAL SUMMARY
In 2010, Hu became romantically involved with Qi Wei Chen. At Chen's request, *172 Guan, a Chinese businessman and friend of Chen's, loaned $2.55 million to Hu so that she could purchase a house in Malibu. The parties documented the transaction in two separate, but related, documents, each dated February 23, 2011: a one-page "Agreement" signed by Guan, Hu, and Chen; and a one-page "Arrangement" signed by Chen and Hu only. Together, the two documents constituted the parties' contract (the contract).
The contract provided that Hu would hold title to the house as its "nominal owner," and that Hu would sell the house when and if instructed to do so by Chen. Hu was required to complete the sale of the house within six months after Chen's instruction. Upon the sale of the house, Hu was entitled to receive a percentage of the property's fair market value. Specifically, Hu would "get 20%" if the house was "sold from Jan[uary] 1[,] 2012," and her percentage would increase by 20 percent each year the house was not sold until January 1, 2016. Thereafter, Hu would receive "100%" of the house "as a gift from Mr. Guan."
Escrow closed in early March 2011, and Hu moved into the house shortly thereafter. In November 2011, Chen emailed Hu telling her that "[i]t is very sad now both of us realized the relationship [cannot] work," and advising her that she was "not qualified to own the house." A month later, in December 2011, Chen visited Hu at the Malibu house, gave her gifts, and said nothing about selling the house.
By April 2012, Chen and Hu's romantic relationship had ended. On July 21, 2012, Chen emailed Hu telling her that " '[i]t is over! Don't you re[a]lize [ ] it with normal sense?! S[ell] the house as instructed by [Guan] so that you could stil[l] be benefited from the deal.' " Hu, however, did not sell the house or take any steps to sell it.
In February 2015, Guan filed a complaint against Hu, alleging breach of a written contract, fraud, and other claims. In a second amended complaint, Guan alleged causes of action for breach of contract, fraud, and rescission based on breach of contract, among others. The court sustained Hu's demurrer as to each cause of action, allowing leave to amend as to the rescission cause of action only.
In September 2015, Guan filed a third amended complaint asserting three causes of action styled as "Rescission," "Cancellation," and "Common Count for Money Had and Received." The rescission cause of action was based upon the same facts Guan had previously pled in his breach of contract cause of action.
Hu thereafter propounded interrogatories concerning the contract allegations. In response to the question whether there was a breach of the contract, Guan answered "yes," and described the breach as Hu's refusal to sell the property and pay the proceeds to Guan. In response to an interrogatory regarding the nature and amount of damages, Guan identified "[m]onetary damages caused by misrepresentations and breach of contract" in the amount of "$2.655 million."
In a demurrer to the third amended complaint, Hu again asserted that Guan failed to plead any ground for rescission, and that the cause of action was "an even worse version of the already-dismissed-with-prejudice breach of contract claim." In opposing the demurrer, Guan explained that he was relying in part on Civil Code section 1689, subdivision (b)(2),[1] which provides that a contract may be rescinded "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, *173 through the fault of the [nonrescinding] party." Guan argued that rescission was thus adequately pled by the allegation that Hu had "breached the written Contracts by total failure to perform her obligations to sell the Property." The court overruled the demurrer.[2]
In January 2016, Guan filed a fourth amended complaint, which realleged the causes of action in the third amended complaint and added causes of action for promissory estoppel and fraud in the inducement. The rescission cause of action alleged the parties' entry into the contract, Guan's performance, and the following: "Pursuant to the terms of the contract, between February 20, 2012 and January 1, 2016, on four occasions, Plaintiff either directly, or through his authorized agent, Chen, instructed Defendant by email to sell the Property. Defendant breached the Contract by failing to sell the Property within six months of receiving unequivocal, written instructions to do so." "Plaintiff will suffer substantial harm and injury under the Contract if it is not rescinded in that Plaintiff would lose his investment of $2,550,000 actually made to purchase the Property and lose his interest in the Property." "Plaintiff has served Defendant with a notice of rescission of the Contract by initiating this action, and hereby demands that Defendant restore to him the consideration furnished by Plaintiff in [the] sum of $2,550,000 plus the appreciation of the Property's market value to be proved at the time of trial." The rescission cause of action did not include any allegation of fraud or misrepresentation. Among other relief, Guan sought: rescission of the contract; return of the funds Guan loaned to Hu; "appreciation of the Property's market value"; a declaration that Hu is a constructive trustee of the property for Guan's benefit; compensatory damages of no less than $2,550,000; and such other and further relief as the court deems just and proper.
Hu answered the fourth amended complaint with a general denial and asserted numerous affirmative defenses to the contract claim. The cause of action for rescission, she alleged, "is actually a cause of action for breach of contract [and] has already been dismissed with prejudice." Hu averred that she and Guan had no contractual relationship, and that the alleged contract violated the statute of frauds and is illegal, void, and contrary to public policy. Hu further alleged that if a contract did exist, she had no duty to perform because she did not receive an instruction to sell the property; and, because Guan failed to perform, he repudiated the contract and breached the implied covenant of good faith and fair dealing.
Hu moved for summary judgment. Regarding rescission, Hu pointed out that Guan did not plead fraud as a basis for rescission, and that the claim "is actually a claim for breach of contract." In his opposition, Guan again relied on the "contractual basis for his rescission claim" based upon section 1689, subdivision (b)(2). The court denied Hu's motion.
Before trial, Hu filed a motion in limine to exclude evidence challenging or contradicting *174 the terms of the written agreement. Guan filed an opposition to the motion in which he stated that "this case has been narrowed through the pleadings to concern only rescission of the Contract and related theories. The case is now about [Hu's] fraudulent conduct, requiring rescission and a full refund ... of all the money [Guan] provided for the purchase of the property, among other remedies, and not about whether or not the Contract required [Hu] to sell the property." (Fn. omitted.)
One week later, Guan filed his trial brief, and asserted that he was entitled to rescission of the contract and damages for money had and received because Hu "breached the Contract by failing and refusing to take any steps to sell the Property after two written instructions from [Chen]." Guan further argued that the facts support his cause of action for promissory estoppel "in the event that [he] cannot establish a cause of action for breach of contract." In addition, Guan asserted that he is entitled to damages based on fraud in the inducement.
At the outset of the bench trial, the court asked Guan's counsel whether Guan was asserting breach of contract or "simply going for broke and asserting that the contract was [void ab initio ] because of fraud." Counsel stated: "We do have the rescission claim, there had been an earlier contract claim the court struck. So we have promissory estoppel and the rescission, which we believe is a contract claim. In our opinion, ... Hu breached the agreement and the arrangement by not doing anything to sell the house once instructed. So yes, we're seeking breach of contract. This is not a go-for-broke claim."
Hu's counsel responded to this point by asserting that "[t]here's no breach of contract in the fourth amended [complaint]. What there is, ... is a fraud inducement. There's a cancellation claim for canceling the facially valid but void agreement, void because of fraud. ... There's promissory estoppel which is a weak form of fraud. There was a promise, the promise on intended reliance. There's rescission. Now, rescission-breach of contract cannot support rescission. What triggers rescission is extensively and exclusively set forth in Civil Code section 1689. Breach of contract is not one of them. Now, the fourth amended complaint only alleges breach of contract to support rescission, but should [the court] during the trial decide to exercise [its] discretion and conform the pleadings to proof, a claim of fraud could in some circumstance, although I think not this one, give rise to rescission." He added: "I do think this is entirely a fraud claim. That's what plaintiff told you in opposition to motions in limine [and] the only way to read their claims."
Hu's defense at trial was based on three theories. First, Chen, as Guan's agent, failed to fulfill his obligations under the contract to make the arrangements necessary to sell the house; therefore, Hu's contractual obligation to sell the property was never triggered and she did not breach the contract. Second, Hu intended to perform when she entered into the contract and, therefore, did not commit fraud. Third, the money used to purchase the house was Chen's, not Guan's, and, therefore, Guan has suffered no damage. Regarding rescission, Hu's counsel acknowledged that the claim was based on breach of contract, but he asserted that rescission cannot be based on that theory. This case, he asserted, "is entirely a fraud claim."
At trial, evidence was adduced regarding the negotiation and formation of the contract, Hu's intent in entering into the contract, the parties' understanding of the contract's terms, the purchase of the house, the source of the purchase money, *175 Chen's instructions to Hu to sell the property, Hu's failure to sell the property after receiving such instructions, and the value and rental value of the property at different times. Hu testified that she had an obligation under the contract to sell the property if she received an "adequate and a proper-serious written instruction to sell the house," but believed that she never received such instructions. She further testified that she paid the property taxes, property insurance, and maintenance expenses for the property.
In closing argument, Guan's counsel argued that the evidence established that Hu had done nothing to "demonstrate that she performed in any fashion ... under the contract." After the court questioned Guan's counsel regarding the fraud claim, counsel pointed out that "only the fifth cause of action is for fraud [in] the inducement." Even if the court does not find fraud, he explained, the other four causes of action are "all based on failure of consideration." Thus, he stated, "all roads in this case lead to rescission." By this, Guan's counsel explained, he meant that each of Guan's "causes of action invoke the court's equitable authority, and the court can take whatever action it deems appropriate and equitable under the law to make sure that [Guan] is protected and gets his money back."
At the outset of Hu's counsel's closing argument, counsel stated that he would address the lack of evidence that Hu did not intend to perform the contract. The court interjected that he must also "address whether or not there was a breach of the contract once the contract was made." Counsel stated that he would do so, and acknowledged that "most of [Guan's] ... case put on at trial was a breach of contract." He asserted, however, that there was "no breach of contract claim" and that "all of [Guan's] claims are fraud-based."
The trial court issued a tentative decision and, after considering Hu's objections, a final statement of decision. The court found that Guan had failed to prove his fraud allegations, and that the evidence was insufficient "to support rescission of the contract on the statutory grounds." The court further found that Hu breached the contract in August 2012 by "failing, after receiving Chen's instruction in his July 21, 2012 email to her, to sell the house and remit the proceeds, net of her share, to Guan." The court stated that "a party asserting the right to rescind a contract may recover damages for its breach if rescission is not found."
Based on the findings that Hu had breached the contract, the court granted the following relief: The court declared Guan the beneficial owner of the property, and appointed a receiver to sell the property; Hu was to receive 20 percent of the value of the property; Hu should be reimbursed $274,400 for her payment of property taxes, insurance, and maintenance expenses for the property; and Hu would be charged with $10,000 per month fair rental value for the 43 months that she possessed the property after her breach, for a total of $430,000. These remedies, the court later explained, were based "upon the allegations and prayer" of the fourth amended complaint, which "provide[d] adequate notice of plaintiff's claims against defendant."
On June 18, 2016, the court entered an amended judgment in accord with its statement of decision. Hu and Guan each appealed. Guan challenged only the court's order denying his motion for leave to amend to conform to proof.
DISCUSSION
I. The Court Did Not Err in Granting Guan Relief Based on Hu's Breach of the Contract.
Hu contends that the court, after finding that Guan failed to prove fraud or the *176 right to rescission, erred by granting Guan relief based on Hu's breach of the contract. We disagree.
A.
According to Hu, each of the causes of action asserted in Guan's fourth amended complaint "failed because [Guan] failed to prove that Hu did not intend to perform her contractual obligation to sell [the property] when she entered into the February 2011 contract." The argument is without merit because the only cause of action in the fourth amended complaint that alleged that Hu did not intend to perform her obligations at the time she entered into the contract agreement was the fifth cause of action for fraudulent inducement. None of the first four causes of action-labeled rescission, cancellation, common count for money had and received, and promissory estoppel-included any allegation of Hu's fraudulent intent.
With respect to Guan's first cause of action, labeled "Rescission," Guan alleged: The parties had entered into the contract; Guan performed his duties under the contract; Hu breached the contract by failing to perform her obligation to sell the property as instructed; and Hu's breach caused Guan harm. A plain reading of the allegations reveals that the rescission cause of action is unrelated to, and independent of, the allegation of Hu's fraudulent intent asserted in the fifth cause of action. The court's conclusion that Guan failed to prove such intent, therefore, is irrelevant to the merits of the first cause of action.
Nor was an allegation or proof of Hu's fraud necessary for Guan's first cause of action. In that cause of action Guan sought rescission. Although fraudulent inducement is one ground for rescission ( § 1689, subd. (b)(1) ), a party to a contract is also entitled to rescission when the other party's breach constitutes a material failure of consideration. (Id. , subd. (b)(2); Wyler v. Feuer (1978) 85 Cal.App.3d 392, 403-404, 149 Cal.Rptr. 626 ; Crofoot Lumber, Inc. v. Thompson (1958) 163 Cal.App.2d 324, 332-333, 329 P.2d 302 ; 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 877, pp. 922-923.)[3] With one possible exception (discussed below), Guan consistently asserted Hu's breach and the resulting failure of consideration as a basis for his rescission cause of action. In opposing both Hu's demurrer to the rescission cause of action in the third amended complaint and Hu's motion for summary judgment on the fourth amended complaint, Guan relied on the failure of consideration basis for rescission. Guan reasserted Hu's breach of the contract in his trial brief and, as Hu's counsel acknowledged, "most of [Guan's] case put on at trial was a breach of contract."
The one exception, which Hu emphasizes, is language in Guan's opposition to a motion in limine in which Guan stated that this "case is now about [Hu's] fraudulent conduct, ... and not about whether or not the Contract required [Hu] to sell the property." Even if that statement, when viewed in isolation, arguably narrowed Guan's theory of rescission, Guan's trial *177 brief, filed one week later, clarified that he was seeking rescission on the ground that Hu "breached the Contract by failing and refusing to take any steps to sell the Property after two written instructions from [Chen]."
Any doubt as to Guan's theories at trial was removed when the court inquired at the outset of trial as to whether Guan was "going for broke" based on the theory of fraudulent inducement, and Guan's counsel clarified that he was not; the rescission claim, he stated, was based on the theory that "Hu breached the agreement and the arrangement by not doing anything to sell the house once instructed.... [W]e're seeking breach of contract. This is not a go-for-broke claim." In light of the otherwise consistent assertion that Guan was pursuing a contract-based theory of rescission, as well as the allegations in the operative pleading, the lone statement in Guan's opposition to a motion in limine did not alter the nature of Guan's first cause of action.[4]
Hu also relies on the trial court's language in its statement of decision that each of Guan's "causes of action allege[s] that Hu had no intention when she signed the contract to comply with a written instruction to sell the house." The court's mistaken belief that all causes of action included a fraud allegation was trivial and not consequential; the important point was that Guan did allege breach of contract, and the court was aware of it.
B.
Hu further contends that Guan's "contract claim was dismissed long before trial, [and he] had no right to advance that claim at trial." She points to the court's order sustaining the demurrer without leave to amend to the breach of contract cause of action in the second amended complaint. That ruling, Hu contends, puts that claim "at rest" and barred Guan from reviving it at trial. For the reasons that follow, we reject this argument.
We agree with the position Hu took in the trial court proceedings that Guan's rescission cause of action was "actually a claim for breach of contract." Generally, a cause of action is the "right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory ... advanced ." ( Boeken v. Philip Morris USA, Inc. (2010) 48 Cal.4th 788, 798, 108 Cal.Rptr.3d 806, 230 P.3d 342, italics added.) Thus, although a breach of contract may be redressed in various ways, such as by rescission, specific performance, declaratory relief, the payment of damages, or injunctive relief (see 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 878, pp. 924-925 ), the remedy is not the cause of action. And where various remedies are sought for the same breach, there is a single cause of cause of action for breach of contract; the " 'seeking of different kinds of relief does not establish *178 different causes of action.' " ( Marden v. Bailard (1954) 124 Cal.App.2d 458, 465, 268 P.2d 809.)
Here, Guan labeled his first cause of action "Rescission." "Rescission," however, "is not a cause of action; it is a remedy." ( Nakash v. Superior Court (1987) 196 Cal.App.3d 59, 70, 241 Cal.Rptr. 578.) To determine the nature of Guan's cause of action, we look at the facts alleged, not its label. (See, e.g., Saunders v. Cariss (1990) 224 Cal.App.3d 905, 908, 274 Cal.Rptr. 186 ; McBride v. Boughton (2004) 123 Cal.App.4th 379, 387, 20 Cal.Rptr.3d 115.) It is "an elementary principle of modern pleading that the nature and character of a pleading is to be determined from its allegations, regardless of what it may be called, and that the subject matter of an action and issues involved are determined from the facts alleged rather than from the title of the pleadings or the character of the damage recovery suggested in connection with the prayer for relief." ( McDonald v. Filice (1967) 252 Cal.App.2d 613, 622, 60 Cal.Rptr. 832 ; accord, Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co. (2002) 95 Cal.App.4th 1273, 1281, 116 Cal.Rptr.2d 370 ; Lovejoy v. AT&T Corp. (2001) 92 Cal.App.4th 85, 98, 111 Cal.Rptr.2d 711.) As set forth above, and as Hu asserted below, the allegations in Guan's first cause of action for "rescission" establish a cause of action for breach of contract, regardless of its label or the remedies he sought.
To the extent that the court's rulings allowing Guan to proceed with his contract-based rescission cause of action are inconsistent with its prior ruling sustaining Hu's demurrer to the second amended complaint's breach of contract cause of action without leave to amend, the later rulings supersede the prior ruling. The trial court's inherent power to do so is well-settled. (See Le Francois v. Goel (2005) 35 Cal.4th 1094, 1107, 29 Cal.Rptr.3d 249, 112 P.3d 636 ; Kerns v. CSE Ins. Group (2003) 106 Cal.App.4th 368, 388, 130 Cal.Rptr.2d 754 ; Nave v. Taggart (1995) 34 Cal.App.4th 1173, 1177, 40 Cal.Rptr.2d 714.) If the rule were otherwise, a court that " 'realizes it has misunderstood or misapplied the law, [would be] prohibited from revisiting its ruling, whether it realize[d] its mistake 10 minutes or 10 days later, and no matter how obvious its error or how draconian the effects of its misstep. "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors." ' " ( Le Francois v. Goel , supra , 35 Cal.4th at p. 1105, 29 Cal.Rptr.3d 249, 112 P.3d 636 ; see also Greenberg v. Superior Court (1982) 131 Cal.App.3d 441, 445, 182 Cal.Rptr. 466 [trial court has inherent power to "correct a ruling which it believes to have been erroneous"].)
This rationale applies forcefully here. Guan had adequately pleaded a cause of action for breach of contract in his second amended complaint, and the trial court erroneously sustained Hu's demurrer to that cause of action. Guan's allegations of the elements of breach of contract in the third amended complaint were not substantially different from the allegations in the second amended complaint; each made identical allegations regarding the parties' entry into the contract, the terms of the contract, Guan's performance, and Hu's breach of the contract. The only material change Guan made was to add the remedy of rescission.[5] Indeed, as Hu argued, the *179 third amended complaint was essentially a "rehash of the exact same allegations" that failed to support a cause of action in the second amended complaint. The court, however, correctly determined that Guan had adequately pleaded a contractual basis for the claim and, having "realize[d] its mistake" ( Case v. Lazben Financial Co. (2002) 99 Cal.App.4th 172, 185, 121 Cal.Rptr.2d 405 ), allowed the restated claim to proceed.
The concurrence/dissent takes the untenable position that once the court sustains a demurrer without leave to amend a cause of action it can never change its mind. The concurrence/dissent would, in effect, hold that interim orders are final judgments-a principle contrary to settled law, as discussed earlier. The concurrence/dissent's reliance on Smith v. City of Los Angeles (1948) 84 Cal.App.2d 297, 190 P.2d 943 ( Smith ) for this proposition does not withstand scrutiny. Citing to Smith, the concurrence/dissent states "that 'orders sustaining demurrers without leave to amend' effectively 'constitute a trial on the merits' and, as such, 'must be considered as judgments after trial.' " (Conc. & dis. opn. post , at p. 190, quoting Smith , supra , 84 Cal.App.2d at p. 302, 190 P.2d 943.) Smith , however, actually states: "The judgments rendered herein, being upon orders sustaining demurrers without leave to amend, constitute a trial on the merits, based upon issues of law raised by such demurrers, and must be considered as judgments after trial." (Ibid .) By selectively quoting only portions of the relevant sentence, the concurrence/dissent conjures a completely new and unworkable legal principle-that interim orders constitute final judgments.
The concurrence/dissent cites Roybal v. University Ford (1989) 207 Cal.App.3d 1080, 255 Cal.Rptr. 469 for the proposition that a dismissal with prejudice " 'clearly means the plaintiff 's right of action is terminated and may not be revived.' " (Conc. & dis. opn. post , at p. 190, quoting Roybal v. University Ford , supra , at pp. 1086-1087, 255 Cal.Rptr. 469.) In that case, the court held that a plaintiff's voluntary dismissal of a complaint with prejudice operated as a retraxit and barred a subsequent action on the same cause under the doctrine of res judicata. (Id. at pp. 1085-1087.) Here, the order sustaining the demurrer to Guan's second amended complaint was not a retraxit, and res judicata does not apply to interim, interlocutory rulings. See Imperial Beverage Co. v. Superior Court (1944) 24 Cal.2d 627, 634, 150 P.2d 881 ; Phillips v. Sprint PCS (2012) 209 Cal.App.4th 758, 770, 147 Cal.Rptr.3d 274 ; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 363, p. 985 ; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 308, p. 763.)
The concurrence/dissent states that our opinion "would invite havoc" (conc. & dis. opn. post , at p. 191) by allowing a trial court to countenance a plaintiff's realleging a claim after the court sustains a demurrer without leave to amend to that claim. There will be no havoc. Indeed, if the court continued to believe that the reasserted claim had no merit, the court could sustain a demurrer filed by a defendant so pointing out, strike the new claim on its own motion, and sanction the plaintiff if the pleading was filed in bad faith or for an improper purpose. (See Code Civ. Proc., §§ 128.5, 128.7 ; cf. Janis v. California State Lottery Com. (1998) 68 Cal.App.4th 824, 829, 80 Cal.Rptr.2d 549 ; Ricard v. Grobstein, Goldman, Stevenson, Siegel, LeVine & Mangel (1992) 6 Cal.App.4th 157, 162, 8 Cal.Rptr.2d 139.) Here, however, the realleged claim gave the court an opportunity to correct its earlier error-the sustaining of the demurrer to the contract cause of action in the second amended complaint-and conformed to the *180 commendable purpose of making interim orders changeable.
The concurrence/dissent's complaint that the trial court did not give Hu notice that it was considering allowing the stricken claim relies on form over substance. Whether the court or Guan gave that notice is immaterial. What matters is that Hu had notice of Guan's contract claim upon service of the fourth amended complaint and an opportunity to oppose the claim's resurrection, which she did more than once.
C.
Although Guan's "rescission" cause of action was, in substance, a breach of contract cause of action, the question remains whether the court, having found that Guan was not entitled to the remedy of rescission, could nevertheless award damages based upon Hu's breach. We conclude that it could.
In the fourth amended complaint, Guan sought rescission and compensatory damages, among other relief. The alternative remedies may be asserted in the same action. (§ 1692; Wong v. Stoler (2015) 237 Cal.App.4th 1375, 1385, 188 Cal.Rptr.3d 674 ; Karapetian v. Carolan (1948) 83 Cal.App.2d 344, 351-352, 188 P.2d 809 ; see generally 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 966, pp. 1015-1017.) A party may thus seek "rescission first and damages if he cannot have it." ( Bancroft v. Woodward 1920) 183 Cal. 99, 102, 190 P. 445.)[6] Here, Guan expressly sought rescission and compensatory damages, among other relief. Although rescission may have been his preferred remedy, he was entitled to recover damages if, as the court determined in this case, "he cannot have it." ( Ibid. )
The concurrence/dissent asserts the trial court found that there was a failure of consideration and thus Guan had prevailed on his rescission claim on that basis. (Conc. & dis. opn. post , at p. 186.) First, the trial court made no such finding. Rather, it expressly rejected that conclusion and found the opposite true, that the evidence did not establish grounds for rescission. Second, as the court found, Hu partially performed under the contract by "protecting the property" and paying the property taxes, insurance, and maintenance expenses during her possession of the property. Lastly, we note that the concurrence/dissent's theory was not even proposed by either party.
D.
Hu argues that the judgment violated her right to due process. In particular, she contends that she "went to trial reasonably believing that she would win if [Guan] did not prove that she had a fraudulent intent not to perform because the claims in the operative complaint were all premised on such an intent." She argues that she also "believe[d] that that contract claim could not be an issue because *181 [Guan's] breach of contract claim had been dismissed long before trial at the pleadings stage, and [Guan] had adamantly asserted that there were no contract issues left in the case." These arguments are generally refuted by the conclusions we reached above: Guan's first four causes of action were based on Hu's breach of contract, not her alleged fraudulent intent; and Guan's breach of contract claim was indisputably in play in the fourth amended complaint.
Moreover, even if Guan's first cause of action as pleaded was ambiguous as to the nature of his claim or remedies he sought, the record reveals that Hu had ample notice of the breach of contract claim and potential remedies. As described above, Guan represented his rescission cause of action as one based on breach of contract and Hu responded to it as such. In opposing Hu's demurrer to that cause of action in the third amended complaint, Guan explained he was relying on the allegation that Hu had "breached the written Contracts by total failure to perform her obligations to sell the Property." After Guan realleged the rescission cause of action in substantially the same form in the fourth amended complaint, Hu, in her answer, expressly characterized the claim as "a cause of action for breach of contract," and asserted numerous affirmative defenses to breach of contract. Hu's motion for summary judgment again asserted that Guan's first cause of action was "actually a claim for breach of contract," and argued that the court should grant summary adjudication of the cause of action because the court had previously sustained a demurrer to Guan's breach of contract claim.
Hu propounded interrogatories concerning Guan's contract allegations, to which Guan affirmed he was seeking damages for breach of contract and identified "[m]onetary damages caused by misrepresentations and breach of contract " in the amount of "$2.655 million." (Italics added.)
In his trial brief, Guan stated that his rescission claim was based on Hu's breach of the contract, and his counsel informed the court at the outset of trial that "we're seeking breach of contract," and that the rescission claim "is a contract claim." The evidence at trial presented by both sides was focused primarily on issues related to the breach of contract claim. In particular, the parties testified about the negotiations concerning the contract and their understanding of its terms, Guan and Chen were examined about the source of the funds used to purchase the property, and evidence was introduced concerning the communications from Guan and Chen to Hu, which Guan argued were instructions to sell and Hu argued were not. Evidence that Hu had done nothing to sell the property, as well as evidence of the rental value of the property and Hu's payments of property expenses, was also introduced. The evidence related to Hu's alleged fraudulent intent, by contrast, was remarkably brief; in essence, Hu testified that she intended to perform, and Guan attempted to impeach her with her deposition testimony that she considered the contract to be a "joke" or a "fiction." The record of the trial, in short, reveals a trial focused almost exclusively on Guan's breach of contract claim and Hu's defenses thereto.[7]
*182 E.
Hu further contends that the court erred in relying on section 1692 in fashioning the remedy for Hu's breach. The second paragraph of that section provides: "If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances." Hu contends that the language, "any other relief to which [the plaintiff] may be entitled under the circumstances ," limits the court's ability to grant "other relief" to cases where the plaintiff sought rescission along with other claims and is entitled to relief on the other claims. It cannot be applied, she argues, when the plaintiff "failed to prove any of the claims in the operative complaint."
The flaw in this argument is that Hu erroneously assumes the success of her earlier argument that all of Guan's claims were based upon fraud and that Guan had failed to prove fraud. As explained above, only Guan's fifth cause of action was based on Hu's alleged fraud, and his first cause of action was indisputably based on Hu's breach of contract. Because the court found that Hu had breached the contract and thereby caused Guan harm, the court reasonably determined that although Guan was not entitled to rescission, he was entitled to relief under the circumstances. (§ 1692; see, e.g., FDIC v. Air Florida System, Inc. (9th Cir. 1987) 822 F.2d 833, 841 [under section 1692, "a breach [of contract] insufficiently material to form the basis for rescission may entitle the aggrieved party to ... damages"]; Kulawitz v. Pacific etc. Paper Co. (1944) 25 Cal.2d 664, 672, 155 P.2d 24 [plaintiff's failure "to establish his right to rescission did not preclude him from any other relief that might be open to him"].)
II.-III.**
DISPOSITION
The amended judgment is affirmed. Guan is awarded his costs on appeal.
CERTIFIED FOR PARTIAL PUBLICATION .
I concur.
LUI, J.

All further statutory references are to the Civil Code unless otherwise indicated.

In overruling Hu's general demurrer, the court stated that Guan had "adequately allege[d] the contractual basis" for the rescission claim. The court also overruled a special demurrer that was based on Code of Civil Procedure section 430.10, subdivision (g), which provides: "In an action founded upon a contract, it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct." The court overruled the demurrer stating that "[t]he claim is for rescission, not for breach of contract; therefore, this isn't an 'action on a contract,' as to which this ground for demurrer could apply."

"Failure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party." (Bliss v. California Co-operative Producers (1947) 30 Cal.2d 240, 248, 181 P.2d 369.) Not every breach or failure to perform, however, will warrant the remedy of rescission; the failure "must be 'material,' or go to the 'essence' of the contract." (Wyler v. Feuer , supra , 85 Cal.App.3d at pp. 403-404, 149 Cal.Rptr. 626 ; see also Crofoot Lumber, Inc. v. Thompson , supra , 163 Cal.App.2d at pp. 332-333, 329 P.2d 302 ; Taliaferro v. Davis (1963) 216 Cal.App.2d 398, 411-412, 31 Cal.Rptr. 164 ; Medico-Dental etc. Co. v. Horton & Converse (1942) 21 Cal.2d 411, 433, 132 P.2d 457 ; Wilson v. Corrugated Kraft Containers (1953) 117 Cal.App.2d 691, 696, 256 P.2d 1012.)

The concurring and dissenting opinion (the concurrence/dissent) relies on the statement in Guan's opposition to a motion in limine for the conclusion that Guan's "claim ... was not based on Hu's breach of a valid contract," but rather "on Hu's fraudulently inducing Guan to enter into an invalid contract." (Conc. & dis. opn. post , at p. 184-85.) The concurrence/dissent implies that Guan asserted a single "claim," not multiple claims, and that Guan changed that claim from a rescission claim based on breach of contract to a rescission claim based on fraudulent inducement. The implication is belied by the record. Guan asserted five causes of action, only one of which is based upon an allegation of fraud. Moreover, Guan's operative complaint, his discovery responses, his trial brief, his counsel's statements to the court at the outset of trial, and the evidence at the trial show that Guan pursued both the contract-based rescission claim and the fraudulent inducement claim.

The request for compensatory damages remained, but was moved to the prayer for relief in the fourth amended complaint.

The concurrence/dissent cites Akin v. Certain Underwriters At Lloyd's London (2006) 140 Cal.App.4th 291, 296, 44 Cal.Rptr.3d 284, for the statement that an " 'action for rescission and an action for breach of contract are alternative remedies,' " and that the " 'election of one bars recovery under the other.' " (Conc. & dis. opn. post , at p. 189-90, italics omitted.) If the concurrence/dissent is suggesting that a plaintiff who is harmed by a defendant's breach of contract cannot pursue each of the alternative remedies of damages and rescission at trial, it is incorrect. Although a plaintiff cannot obtain both rescission and damages for the same wrong, it is well-settled that he or she can seek each in the alternative. (See Williams v. Marshall (1951) 37 Cal.2d 445, 457, 235 P.2d 372 ; Walters v. Marler (1978) 83 Cal.App.3d 1, 16, 147 Cal.Rptr. 655 ; 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 936, pp. 986-987.)

We note that the statement of facts and procedural history in Hu's opening brief omitted almost all of the relevant facts bearing upon the question whether Guan's claims were based on breach of contract and Hu's notice thereof. The brief thus violates rule 8.204(a)(2)(C) of the California Rules of Court, which requires that opening briefs "[p]rovide a summary of the significant facts." (See Hjelm v. Prometheus Real Estate Group, Inc. (2016) 3 Cal.App.5th 1155, 1166, 208 Cal.Rptr.3d 394 ; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2016) ¶ 9:27, pp. 9-8 to 9-9, ¶ 9:126, pp. 9-38 to 9-39.) It was only after this court granted a motion for rehearing that Hu was more forthcoming.

See footnote *, ante .